# UNITED STATES DISTRICT COURT
# EASTERN OF WASHINGTON

| | |
|---|---|
| JADE WILCOX, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>                   PLAINTIFFS,<br><br>  VS.<br><br>JOHN BASTISTE, CHIEF OF THE WASHINGTON STATE PATROL AND AGENTS OF DEFENDANTS, AND ENTITY DOES 1 THROUGH 300.<br><br>             DEFENDANTS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.:  17-cv-00122<br><br>COMPLAINT -- CLASS ACTION FOR DAMAGES AND OTHER RELIEF UNDER THE DRIVER'S PRIVACY PROTECTION ACT, AND JURY DEMAND |

## I.      INTRODUCTION

1.1    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1988, the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*

1.2    By this action, Plaintiffs seek statutory damages and injunctive relief against the JOHN BASTISTE, Chief of the Washington State Patrol, and his

COMPLAINT AND JURY DEMAND - 1

agents for disclosing protected Department of Licensing & Motor Vehicles personal information to third parties of thousands of Washington State motorists without their express consent in violation the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §2721, *et seq.*

1.3    Each unauthorized and impermissible use, disclosure, or obtainment of DPPA-protected personal information violated Plaintiffs' federal privacy rights; behavior prohibited by the federal constitution, federal statute, Washington State statute, and common law prohibiting some or all of the conduct engaged in by Defendants, including JOHN BASTISTE, his agents, and other entity defendants acting in both their official and individual capacities.

1.4    The DPPA provides for statutory damages of $2,500 per violation, injunctive relief, and attorneys' fees.

1.5    Plaintiffs, on behalf of themselves and the class members, seek: (i) judicial determination that certain actions of Defendants violate the DPPA; (ii) judgment for damages to Plaintiffs and the class members, as a proximate result of Defendants' violations of the rights of Plaintiffs and the class members secured under the DPPA; and (iii) preliminary and a permanent injunction against Defendants from committing future violations.

COMPLAINT AND JURY DEMAND - 2

## II.    JURISDICTION AND VENUE

2.1    This court has original jurisdiction over this civil action.  Under 28 U.S.C. §1331 and §1343, the United States District Courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

2.2    This court has subject matter jurisdiction to consider Plaintiffs' class action claims brought pursuant to the Driver's Privacy Protection Act, 18 U.S.C. § 2724.

2.3    This court also has supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367.

2.4    This court has personal jurisdiction over the individual defendants. Public officials sued in their individual capacities are persons subject to suit under Section 1983.  *Hafer v. Melo,* 502 U.S. 21, 30, 112 S. Ct. 358, 363, 116 L. Ed. 2d 301, 313 (1991).

2.5    Defendants reside or transact business, committed an illegal or tortious act in, maintain agents or representatives in, or can otherwise be found in this District, and throughout the State of Washington.

2.6    Venue is proper in the United States District Court for the Eastern District of Washington pursuant to 28 U.S.C. §§ 1391(a)-(b) as Defendants are

COMPLAINT AND JURY DEMAND - 3

subject to personal jurisdiction in this judicial district and a substantial part of the events and harm giving rising to the claim occurred in this judicial district.

### III.    PARTIES

3.1    Plaintiffs have at all times material to this action had a motor vehicle registered with the Washington Department of Motor Vehicles (DMV hereafter), and have held a Washington driver's license issued by the Washington Department of Licensing (DOL hereafter).

3.2    Plaintiff, JADE WILCOX, has at all times material to this action had a motor vehicle registered with the Washington Department of Motor Vehicles, and has held a Washington driver's license issued by the DMV.  She is a resident of Spokane, Washington, which is in this District.

3.3    Defendant JOHN BATISTE at all times mentioned herein has been, the Chief of the Washington State Patrol, a state agency.  On information and belief, JOHN BATISTE caused agents of the WSP and others to engage in, as well as personally directed, authorized or otherwise supervised, the unlawful conduct alleged herein.

3.4    Defendants, Entity Does 1 through 300, are agents of working for Washington State Patrol, or may also be private individuals, organizations, corporations, partnerships or commercial entities, associated and transacting

COMPLAINT AND JURY DEMAND - 4

business in Washington State, and at all times mentioned herein have been, individuals residing in the State of Washington.

## IV.   STATUTORY BACKGROUND AND FACTS

4.1    Plaintiffs are individuals living in Washington State, who have been involved in traffic collisions in the State of Washington, whose "personal information" and/or "highly restricted personal information" is contained in "motor vehicle records" kept by Washington Department of Motor Vehicles ("DMV"), within the meaning of 18 U.S.C. § 2725.

4.2    Plaintiffs have been motor vehicle registrants whose motor vehicles have been registered with the DMV during all times material hereto.

4.3    To obtain a driver's license or motor vehicle registration from a state motor vehicle department (DMV), individuals must disclose personal information, such as names, addresses, telephone numbers, social security numbers, medical information, vehicle descriptions, and photographs.  *See Reno v. Condon,* 528 U.S. 141, 143, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

4.4    The DPPA was passed in response to several highly-publicized crimes, which occurred as a result of criminals obtaining personal information from publicly available motor vehicle records, and using the information to stalk, murder or rob their victims.

COMPLAINT AND JURY DEMAND - 5

4.5    The DPPA was amended in 1999, to further restrict the distribution of personal information from motor vehicle records to marketers and solicitors without the express consent of the individual to whom the information pertains.

4.6    "Concerned that personal information collected by States in the licensing of motor vehicle drivers was being released— even sold—with resulting loss of privacy for many persons," Congress provided federal statutory protection. It enacted the Driver's Privacy Protection Act of 1994, referred to here as the "DPPA" to regulate the sale and disclosure of information that state DMVs collect in the process of registering and licensing drivers of motor vehicles." *Maracich v. Spears*, 133 S.Ct. 2191, 2195, 186 L. Ed. 2d 275 (2013).[1]

4.7    The DPPA prohibits disclosure of personal information derived from or pertaining to a motor vehicle record except for uses explicitly enumerated in the statute. *See* 18 U.S.C. § 2721(a)-(b).

4.8    Under § 2721(c), an authorized recipient may only re-disclose personal information to an authorized recipient for an authorized use. "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number,

---

[1]  *See e.g.* 139 CONG. REC. S 15745-01, S 15762 (daily ed. Nov. 13, 1993) (Statement of Sen. Boxer).

COMPLAINT AND JURY DEMAND - 6

name, address (but not the 5–digit zip code), telephone number, and medical or disability information." *Id.* § 2725(3).

4.9    Also relevant here, personal information in a motor vehicle record may be disclosed by a state DMV for, among other permissible uses, "use by any government agency, including any court or law enforcement agency, in carrying out its functions," or for use by a private person acting on behalf of a government agency in carrying out its functions. *Id.* § 2721(b)(1).

4.10    Personal information may also be disclosed by a state DMV "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding" or for "investigation in anticipation of litigation." *Id.* § 2721(b)(4).

4.11    However, a person who "knowingly obtains, discloses or uses" an individual's personal information, "from a motor vehicle record, for a purpose not permitted" is liable to the individual, and the court may award "actual damages, but not less than liquidated damages in the amount of $2500," attorney's fees, and "punitive damages upon proof of willful or reckless disregard of the law." *Id*. § 2724.

4.12    In the context of the DPPA, to act knowingly is to act with knowledge of the facts that constitute the offense. *See, e.g., Bryan v. Unites States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 1946, (1998) ("[U]nless the text of the statute

COMPLAINT AND JURY DEMAND - 7

dictates a different result; the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense.")

4.13   Consistent with federal law under the DPPA, Washington state law protects "any record used to prove identity, age, residential address, social security number, or other personal information required to apply for a driver's license or identicard." RCW 42.56.230(7)(a).

4.14   The Washington Department of Motor Vehicles maintains a database of driver's license data (referred to as the DMV or DOL database), which contains personal information from Department of Motor Vehicle records, including but not limited to names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Washington drivers, both current and former, dating back to the driver's first license issued in Washington.

4.15   The Department of Motor Vehicles makes drivers' motor vehicle records available to law enforcement officers through a computerized Driver and Vehicle Services database (referred to as ACCESS and SECTOR).  Law enforcement officers, government agents, and other individuals are given passwords to access the database for permissible uses through an internet portal or website.

COMPLAINT AND JURY DEMAND - 8

4.16   At the scene of an auto accident the WSP, and other police agencies, utilize drivers' licenses or license plates to verify information through the computer system and auto-populate traffic collision reports.  Drivers' licenses, which are DMV records, have magnetic codes on the back used to swipe or scan through a laptop system. Swiping or scanning the driver's license accesses information from the DMV database, and auto-populates officers' laptops and collision reports.  If an individual does not have a driver's license, the officer performs queries on his laptop by entering a name, date of birth, or license plate and the DMV database is accessed so an officer can identify the individual and auto-populate a report.

4.17   Traffic collision reports contain personally identifying information from the DMV database - including names, addresses, phone numbers, vehicle identification numbers, drivers' license numbers, and potentially medical or disability information.

4.18   Unlike the Health Insurance Portability and Accountability Act ("HIPAA"), the DPPA subjects authorized recipients to the same confidentiality standards as the department of motor vehicles.  Under § 2721(c), an authorized recipient may only re-disclose personal information to an authorized recipient for an authorized use.  DPPA-protected information does not suddenly lose its protected status upon being included in a traffic collision report.

COMPLAINT AND JURY DEMAND - 9

4.19    The Washington State Patrol maintains a "Public Records Exemption Code List" citing both RCW 42.56.230(7) and the DPPA as proper exemptions to redact personal information "obtained by the department in connection with a driver/motor vehicle record, without the express consent of the person to whom such information applies … [including] photograph or image, social security number, driver identification number, name, address, phone number, medical/disability information… Non-disclosure is essential to the protection of an individual's right to privacy… An authorized recipient of driver's personal information may not redistribute the information in most circumstances."

4.20    In addition to the limitations set forth above, there is also a matter of record keeping. The WSP must keep, for a period of 5 years, records identifying each person or entity that receives protected information and the permitted purpose for which the information will be used.

4.21    WSP Chief, JOHN BASTISTE, disregarded his agency's own Public Disclosure Exemption list set forth above, and authorized his agents to do so as well.

4.22    As a matter of practice, Chief BASTISTE, authorized and allowed his agents to violate the WSP Public Disclosure Exemption list when traffic collision reports containing Plaintiffs' personal and identifying information were sold to outside persons, organizations, and entities in violation of the DPPA.

COMPLAINT AND JURY DEMAND - 10

4.23   The records were sold in violation of the WSP Public Disclosure Exemption list without redaction of personal information to private entities (Entity Defendants) and for impermissible purposes including commercial purposes, solicitation of accident victims, or other purposes not permitted.

4.24   Chief BASTISTE violated the WSP Public Disclosure Exemption list by not requiring an affirmation of the purpose for which traffic collision reports were requested or in the alternative, the express consent in writing of the individuals to whom such personal information pertained, prior to delivering the personal information to the requestor.

4.25   Chief BASTISTE, chose to continue to violate and allow his agents to violate the WSP Public Disclosure Exemption list and failed in all respects to use reasonable care when disclosing the protected information derived from the Department of Motor Vehicles contained in traffic collision reports.

4.26   Chief BASTISTE chose not to make reasonable effort nor directed any subordinate to make any reasonable effort to determine the specified purpose of the disclosure was permitted and an affirmation from the requestor that personal information disclosed would not be used for an improper purpose.

4.27   Chief BASTISTE chose to not to make reasonable efforts to have agents ascertain or ensure that the persons to whom protected personal information was disclosed would be used permissibly.

COMPLAINT AND JURY DEMAND - 11

4.28    Chief BASTISTE had actual knowledge, constructive knowledge, that entity defendants were obtaining protected DPPA information in violation of their own internal policy.

4.29    Chief BASTISTE chose to do nothing, despite complaints, news articles and employee warnings that the DPPA was being violated by widespread dissemination of traffic collision reports for reasons not permitted by the DPPA.

4.30    Chief BASTISTE had actual knowledge that his agents were not complying with WSP internal policy contained in the Public Record Exemption list and were violating their duty to ascertain the recipients' purpose for his/her obtainment or use of the protected personal information contained in traffic collision reports.

4.31    Chief BASTISTE and his agents chose to disregard agency policy to protect personal information of members of the public as outlined by the DPPA and failed abysmally to protect the privacy rights of Plaintiffs and others similarly situated.

4.32    Chief BASTISTE and his agents' failure to act constitute knowing disclosures of personal information within the meaning of the DPPA.

4.33    Chief BASTISTE and his agents permitted, and on information and belief still permit, the accessing of un-redacted traffic collision reports containing "personal information" from entity defendant's personal computers without any

COMPLAINT AND JURY DEMAND - 12

accountability or, even in some instances, without the ability to trace the person who made the access in violation of the DPPA.

4.34    Many viable methods were and are available to prevent this illegal accessing of protected DPPA personal information.

4.35    States other than Washington have far greater restrictions and protections in place to protect the data on their drivers' license databases from being obtained, disclosed or used for a reason not permitted by the DPPA.

4.36    The WSP obtained financial benefits from these disclosures.

4.37    Numerous Entity Defendants systematically obtained, disclosed, and/or used WSP traffic collision reports to identify and solicit accident victims, and for other purposes not permitted under the DPPA.

4.38    Obtainment, disclosure, and/or use of accident victim's DPPA-protected personal information is prohibited unless a specific exception is delineated in the DPPA statute.

4.39    Pecuniary motivations such as solicitation and marketing are not permissible purposes to obtain, disclose, or use personal information under the DPPA.

4.40    Defendants knowingly obtained, disclosed, or used personal information, from a motor vehicle record, for a purpose not permitted.

COMPLAINT AND JURY DEMAND - 13

4.41    The extent of this illegal access is widespread and pervasive throughout the state, and is a common practice of some business organizations.

4.42    Before filing suit, Plaintiffs contacted several government offices and officials, including the Washington State Patrol, Washington Attorney General, and Washington Bar Association, providing the relevant facts in a letter requesting the DPPA violations be stopped, or to provide a justification for employees, agents, and officers to continue selling personal information protected by the DPPA.  The Washington State Patrol and the Attorney General's Office did not provide any legitimate permissible reasons for these obtainments and uses in violation of the DPPA.

4.43    Upon information and belief, Defendant Chief BASTISTE, and his agents have done nothing to remedy or halt the continuing use and disclosure of personal information obtained from the DMV database for the above-referenced marketing and solicitation purposes, or other purposes not permitted under the DPPA.

4.44    By continuing to permit disclosure of personal information derived from the DMV database to any person regardless of the purpose for requesting a traffic collision report, the intended purpose of DPPA is eviscerated.

4.45    Plaintiffs' allege even more unauthorized disclosure of protected DPPA information will occur in the future if the policies of the WSP Public

COMPLAINT AND JURY DEMAND - 14

Disclosure Exemption list are not followed by Defendant WSP Chief, JOHN

BISTISTE and his agents in compliance the DPPA.

4.46   Unless enjoined by the Court such conduct in violation of the DPPA

will continue unabated.

4.47   Drivers need assurance that their personal information will be

safeguarded and kept private.  The sheer volume of the intrusions into Plaintiffs'

private lives demonstrates that law-enforcement personnel, public employees, and

others are unfairly hostile and careless toward protected information, citizens'

privacy rights, and public safety concerns.

4.48   The conduct of Defendants constitutes a reckless disregard for the

Washington citizen privacy rights

## V.    PLAINTIFF JADE WILCOX'S PRIVATE INFORMATION

5.1   Plaintiff JADE WILCOX was a driver involved in an automobile

accident on July 9, 2016.

5.2   The motor vehicle is registered in her name and is registered at the

address where she resides.

5.3   A traffic collision report was created on July 9, 2016.

5.4   The investigating officer obtained JADE WILCOX driver's license

and swiped the driver's license with the magnetic code on the back to access the

database system.

COMPLAINT AND JURY DEMAND - 15

5.5    The collision report was auto-populated with protected information, including her name, address, and date of birth.

5.6    On July 14, 2016, a representative of a private entity and legal services organization contacted by mail, without invitation or consent, at her personal residence in an attempt to solicit business.

5.7    The letter she received explained that her information was obtained from Washington public records, and attached to the letter was a glossy pamphlet from the law office of Craig Swapp marketing his legal services.

5.8    JADE WILCOX was highly offended and suffered harm including harms resulting from intrusion upon her privacy and seclusion.

5.9    Disclosure of her personal information breached a trust and subjects her to the risk that her information can be used against her.  Further harm could take the form of something as mundanely annoying as junk mail and unwanted solicitation or as serious as identity theft, stalking, or battery.

5.10    The DPPA's purpose was to combat all of these types of exposures by preventing the disclosure of personal information that could lead to them.

5.11    This is a common and routine sale of DPPA-protected personal information.  Attorneys, chiropractors, and others purpose for obtaining WSP collision reports is for solicitation and their own personal profit.  For instance:

COMPLAINT AND JURY DEMAND - 16

a) On April 28, 2015, Mr. Swapp wrote to the WSBA: "Our law firm is a for-profit organization, we have never requested lists of individuals, but rather comprehensive auto-accident reports… Regarding our practice of direct mailings, we reaffirm that only Washington's Rules of Professional Conduct apply in this case… our mailers provide 'how-to' guides in dealing with property damage and medical bills, along with a free police report…" (Swapp, April 28, 2015, letter)

b) On June 5, 2015, Mr. Swapp wrote to the WSBA: "we emphasize that our firm was obtaining comprehensive police reports, which comprise a myriad of information… we are supplying police reports free of charge, along with 'how-to' information aiding the person who has been in an accident in protecting their rights.  Should any of the persons be interested in retaining our firm to help in this process, which may include litigation, we offer these services… we provide these police reports for free along with information providing guidance to these victims on protecting their claim. In addition, we offer our legal services, which these individuals are free to accept if they so choose." (Swapp, June 5, 2015, letter)

c) On May 27, 2016, WSBA Disciplinary Counsel Christine Gray issued a letter setting forth the following findings: "The facts here are uncontested… On a regular basis, Mr. Swapp's office has obtained reports from the

COMPLAINT AND JURY DEMAND - 17

Washington State patrol … On a regular basis, Mr. Swapp's office has used some information on those reports to send solicitation letters to potential clients… [It is undisputed] Mr. Swapp obtained collision reports from the Washington State Patrol and used information from those reports to solicit potential clients by mail." (Gray, May 27, 2016, letter).

d) Swapp, Inc., continuously and comprehensively orders Spokane County traffic collision reports electronically and then harvests those reports for names and addresses. Accident victims are solicited by Swapp, Inc., within a matter of days. Citizens receiving Craig Swapp's solicitations have not consented to the contact or waived any privacy rights they have under Federal and Washington state law, and have not sought out his representation.

e) Swapp and Associates pays for bulk reports and is billed on a monthly basis. Billings are mailed to Craig Swapp and Associates PO BOX 709390, Sandy, Utah 84070. Monthly invoices for WSP traffic crash reports in Spokane County during the period of August 2014 to January 2015 are contained in the file. On January 15, 2015, the monthly charge was $4,351.00, or approximately 500 reports in one month, over 15 per day.

COMPLAINT AND JURY DEMAND - 18

f) Craig Swapp does not hide his profit motives. "We're trying to make a brand," he publicly told news reporters when questioned about the practice.[2]

## VI.   ALLEGATIONS CONCERNING ALL PLAINTIFFS

6.1    Because non-redacted WSP traffic crash reports contain information transposed from, or pertaining to, a crash victims' motor vehicle records, they incorporate personal information that originated from a motor vehicle record which is DPPA-protected.

6.2    Defendant obtainment, use, and/or disclosure of personal information from motor vehicle records are not permitted by the DPPA.

6.3    Defendant WSP Chief, JOHN BASTISTE and his agents disregarded directives, including the Public Disclosure Exemption list within their own organization, and thereby violated the DPPA by disclosing traffic collision reports containing personal information of Washington motorists to numerous entity Defendants.  These reports included names, addresses, drivers' license numbers and vehicle identification numbers for vehicle owners in Washington.

---

[2]  Spokane Inlander, Article "CRASH > CLICK > CASH," July 21 2016: http://www.inlander.com/spokane/crash-andgt-click-andgt-cash/Content?oid =2834087

COMPLAINT AND JURY DEMAND - 19

6.4    Plaintiffs are informed and believe and on that basis allege that all Defendants, agent Defendants and entity Defendants, have engaged in similar conduct towards other motorists in Washington by knowingly obtaining, disclosing and/or using, without obtaining consent, DPPA-protected personal information contained in from traffic collision reports, for the purpose of contacting such persons with marketing and solicitations.

6.5    Plaintiffs upon information and belief, allege that at all times relevant hereto, Defendant WSP Chief, JOHN BATISTE knew, should have known and/or was reckless with regard to the fact that, without first obtaining Plaintiffs' consent, it was unlawful to disclose Plaintiffs' DPPA-protected personal information contained in traffic collision reports.

6.6    The aforementioned conduct of Defendants, agent Defendants and entity Defendants constitutes a violation of the DPPA.

## VII.   CLASS REPRESENTATION ALLEGATIONS

7.1    Plaintiffs bring this action on behalf of themselves and as a class of victims (the "Class" or "Class Members") pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1)-(3), as defined as follows:

a)   All individuals whose personal or highly restricted personal information as defined by the DPPA, was knowingly obtained, disclosed or used by

COMPLAINT AND JURY DEMAND - 20

Defendants and/or their agents, without their consent, for purposes not permitted under the DPPA, from four years prior through the present.[3]

b) To be excluded from the Class are persons who have authorized in writing their protected information may be disclosed to provide third parties with their "personal information" for any purpose; those persons whose information was obtained for a permissible purpose defined by the DPPA; and those persons employed by or otherwise related to Defendants, or its subsidiaries, their successors, or affiliates, and any and all members of the federal judiciary.

## VIII. RULE 23 ALLEGATIONS

8.1    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs' action may be maintained as a class action because all procedural elements are satisfied as set forth below:

### **Numerosity**

8.2    The members of the class are so numerous that separate joinder of each member is impracticable.  The members of the class are geographically dispersed among all persons who have applied for a driver's license in the State of Washington and been involved in a traffic collision.  The number of individuals in

---

[3] The four-year statute of limitations, set forth in 28 U.S.C. § 1658(a), begins to run when the DPPA violation occurred.

COMPLAINT AND JURY DEMAND - 21

Washington whose "personal" and/or " "highly restricted personal information"

Defendants knowingly obtained, disclosed or used from motor vehicle records of

the DMV for marketing or other purposes not permitted under the DPPA, or

Defendant's subsequently knowing use or disclosure thereof, exceeds thousands,

and could be above tens of thousands.

8.3    Accordingly, the Class is so numerous that it would be impractical to

join all of the members of the Class within the meaning of Rule 23(a)(1).

8.4    The exact number and identity of Class Members is unknown to

Plaintiffs but can easily be determined from the records of Defendant.  The

particular members of the Class are capable of being described without difficult

managerial or administrative problems.  The members of the Class are readily

identifiable from the information and records in the possession or control of the

Defendant.

### Commonality

8.5    The claims of Plaintiffs raise questions of law or fact common the

claims of each member of the class, as contemplated by Rule 23(a)(2).  The

common questions include, but are not limited to, whether:

(a) Defendants knowingly obtained, disclosed and/or used Plaintiffs' personal

or highly personal information derived from the motor vehicle records of

COMPLAINT AND JURY DEMAND - 22

the DMV, without their consent, for marketing and solicitation or other uses not permitted by 18 U.S.C. § 2721(b) of the DPPA;

(b) Defendants' conduct described above violates the DPPA;

(c) Defendants' pattern of conduct, in violation of the DPPA, requires Defendants and those acting in concert with Defendants in violation of the DPPA, to be permanently enjoined from such conduct in the future;

(d) Plaintiffs and the class members are entitled to the remedies expressly provided under 18 U.S.C. § 2724(b) of the DPPA including, *inter alia*, liquidated damages in the amount of $2,500, as expressly provided for under 18 U.S.C. § 2724(b)(1) of the DPPA;

(e) Defendants' pattern of conduct, in violation of the DPPA, was willful or in reckless disregard of the law, warranting the award of punitive against Defendants and in favor of Plaintiffs and the class members, as expressly provided under 18 U.S.C. § 2724(b)(2) of the DPPA;

(f) Plaintiffs and the class members are entitled to other preliminary and equitable relief, reasonable attorneys' fees, and litigation costs, as expressly provided under 18 U.S.C. § 2724(b) of the DPPA.

## **Typicality**

8.6    Plaintiffs' claims are typical of the claims of each member of the class because between the relevant time period described herein, above, Plaintiffs

COMPLAINT AND JURY DEMAND - 23

had personal information about them disclosed and obtained by Defendants, without their consent, for solicitation and other purposes not permitted by the DPPA. The requirement of typicality is also satisfied because proof of the elements of Plaintiffs' claims, and the conduct of Defendants, will demonstrate Defendants' liability to all other members of the class.

8.7     The interests of Plaintiffs are co-extensive with the other members of the class on these questions, with whom they share a common right of recovery based on the same core of operative facts, in accordance with the requirements of Rule 23(a)(3).

## Adequacy

8.8     In accordance with the requirements of Rule 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the class and have engaged the services of counsel experienced in class action litigation. Plaintiffs are committed to vigorously litigating this matter and will fairly and adequately protect and represent the interests of each member of the proposed class.

8.9     Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class. Plaintiffs understand the nature of the claims herein and their role in this

COMPLAINT AND JURY DEMAND - 24

proceeding.  A remedy available under the DPPA is the liquidated sum of $2,500, which Plaintiff intends to seek for all members of the Class.

## IX.    RULE 23(B) ALLEGATIONS

9.1    Although certification would be proper under Rule 23 (b) (1), (2) or (3), courts will sometimes bifurcate certification under two rules, which is what the Court may wish to do in this case. (*See e.g.* Rule 23 (c) (4) - Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.)

9.2    Certification under (b) (1) is proper, at a minimum, because by not certifying the class, there is a risk of inconsistent legal rulings.

9.3    Certification under (b) (2) is proper because this case involves standardized conduct applying to all of the class members such that the case stands or falls as a whole on the Court's legal rulings.  There will only be one declaratory judgment and one injunctive relief applicable to the entire class.

9.4    Certification is also proper under (b)(3) because the DPPA permits courts to award actual damages, but not less than liquidated damages of $2,500 per violation.  While Plaintiff is seeking liquidated damages on behalf of the entire class, it is remotely possible that one or two members may wish to opt out and pursue their own claims.

COMPLAINT AND JURY DEMAND - 25

9.5    All class members have the same legal rights under the DPPA. Defendant's violations of the DPPA have damaged all of the class members in a similar way. The class action is superior to any other method for remedying Defendant's violations of the DPPA given that common questions of fact and law predominate and the liquidated damage provisions of the DPPA make the remedy available to class members identical. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

9.6    This action is, therefore, appropriate for class action status because the prosecution of separate actions by or against individual members of the class would be unduly burdensome, and creates a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.

9.7    Defendants have utilized the same procedures in knowingly obtaining, disclosing or using personal information pertaining to Plaintiffs and Class Members for a purpose not permitted by the DPPA. In addition to damages sought herein, this action is appropriate for class action status because Defendants have acted in a pattern of the same unlawful conduct to all members of the class, on grounds generally applicable to all class members, thereby making final declaratory or injunctive relief concerning the class as a whole appropriate.

COMPLAINT AND JURY DEMAND - 26

Plaintiffs seek declaratory and injunctive relief against Defendants based upon uniform and continuous violations of the DPPA.

9.8    The continued violation of Plaintiffs' and the class members' rights secured under the DPPA results in irreparable harm for which there is no adequate remedy at law.

9.9    Defendants' actions and methods in obtaining, using and disclosing personal information pertaining to Plaintiffs and the class members without their consent violates the DPPA, and generally affects Plaintiffs and the class members in the same way, by invading their rights of privacy provided under the DPPA.  A class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' controversy.  Absent a class action, Class Members will continue to be aggrieved by Defendant's violations of the DPPA.

9.10   Plaintiffs' action will result in an orderly and expeditious administration of Class claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The names of the class members are readily ascertainable from, *inter alia*, collision report sales and the records of Defendants and their agents.  Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum

COMPLAINT AND JURY DEMAND - 27

simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail.

9.11   The assertion of separate individual claims is impractical and cost prohibitive for individual claimants, Defendants and the court system itself.  Most individual Class Members have little ability to prosecute an individual action due to the complexity of the issues involved in Plaintiffs' litigation, the significant costs attendant to litigation on Plaintiffs' scale, and the comparatively small, although significant, injuries suffered by individual Class Members.  The interest of the class members in individually controlling the prosecution of separate claims against Defendants is slight, whereas maintaining this action as a class action in this forum is desirable as it will permit the claims of Plaintiffs and the class members to be adjudicated efficiently, based upon the same pattern of unlawful conduct by Defendants, and a common right of recovery arising from the same set of facts.

## X.    FIRST CLAIM FOR RELIEF - FOR VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT (18 U.S.C. § 2721, *et seq.*) (Against All Defendants)

10.1   This Court has jurisdiction to declare the rights and other legal relations of the parties and the class members as to whether the policies, procedures, practices and acts of Defendants described above, have violated, and

COMPLAINT AND JURY DEMAND - 28

will continue to violate, the rights of Plaintiffs and the class members, as provided to them by the DPPA.

10.2    Plaintiffs and Class Members are individuals, whose "personal information" and/or "highly restricted personal information" is contained in "motor vehicle records," within the meaning of 18 U.S.C. § 2725.  As set forth above, Defendants have obtained, disclosed, and used "personal information" and/or "highly restricted personal information" relating to Plaintiffs and Class Members.

10.3    Defendants have committed numerous violations of the DPPA by knowingly obtaining, disclosing and/or using Plaintiffs' and the class members' personal information from WSP traffic collision reports without Plaintiffs' or the class members' consent, for purposes not permitted by the DPPA.  As set forth above, upon information and belief, Defendants are liable for knowingly obtaining, disclosing or using "personal information" and/or "highly restricted personal information" of Plaintiffs and Class Members for marketing or other purposes not permitted under the DPPA. Under the DPPA, Plaintiff and Class Members' personal information cannot be obtained, disclosed or used for marketing purposes unless Defendants have received prior written consent from them, or the state of Washington has obtained his prior express consent in writing. 18 U.S.C. § 2721.

COMPLAINT AND JURY DEMAND - 29

10.4   Washington law is preempted by the DPPA, and Washington is required to enforce and follow the DPPA and to hold all information obtained pursuant to an application for a driver's license confidential and private. Defendants knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Plaintiffs' private personal information without a permissible purpose.

10.5   Upon information and belief, Defendants agreed and conspired with each other to engage in the unlawful and improper acts described above, including but not limited to invading the privacy of Plaintiffs and class members, in violation of the DPPA. By the actions complained of, Defendants are jointly liable.

10.6   Sale of Plaintiffs' DPPA-protected personal information is highly offensive.  Disclosure of personal information breaches a trust and subjects individuals to safety and privacy violations. Harm takes the form of privacy violations such as junk mail or unwanted solicitation and can be as serious as identity theft, stalking, or battery. The injuries do not merely constitute a one-time invasion, but also a continuing, permanent and irreparable harm. Once a citizen's personal information is unlawfully sold it can be electronically distributed or re-sold instantaneously over the internet. There is no feasible way to protect a person's personal information once the records have been disclosed in violation of

COMPLAINT AND JURY DEMAND - 30

the DPPA; the disclosure is permanent. This is precisely why the DPPA expressly provides for injunctive remedies, 18 U.S.C. § 2724(b)(4), when a person knowingly obtaining, disclosing, or using personal information from motor vehicle record for an impermissible purpose, 18 U.S.C. § 2724(a).

10.7    As a direct and proximate result of Defendants' conduct set forth above, Plaintiffs have suffered damages, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under 18 U.S.C. § 2724(b) of the DPPA.

10.8    Plaintiffs are informed and believe and on that basis allege that Defendants acted, with respect to Plaintiffs and the class members, in willful, or at the very least reckless, disregard of the law, in that Defendants knew it was unlawful to access, disclose, obtain and/or use Plaintiffs' and the class members' personal information from derived from motor vehicle records, in violation of the DPPA.

10.9    Accordingly, Plaintiffs are entitled to punitive damages pursuant to 18 U.S.C. § 2724(b)(2).

10.10 Plaintiffs and the class members have suffered and continue to suffer irreparable harm by virtue of the increased risk that their protected information is in the possession of Individual Defendants who obtained it without a legitimate purpose. Plaintiffs are informed and believe and on that basis allege that unless

COMPLAINT AND JURY DEMAND - 31

restrained and enjoined by this Court, Defendants will continue to unlawfully

obtain, disclose and use Plaintiffs' and the class members' confidential and

personal information and invade their privacy to their substantial detriment, as

well as invading the privacy of others.  No adequate remedy at law exists to

prevent such harm.  This is precisely the harm Congress sought to prevent by

enacting the DPPA and its statutory remedies.

10.11 Based on the foregoing, Defendant is liable for knowingly obtaining,

disclosing or using personal information pertaining to Plaintiffs and Class

Members for a purpose not permitted by the DPPA, and is thereby liable to

Plaintiffs and Class Members for damages and equitable relief pursuant to 18

U.S.C. § 2724.  Moreover, impermissibly obtained, disclosed, or used Plaintiffs

and Class Members' information and is thereby liable to Plaintiffs and Class

Members for damages and equitable relief pursuant to 18 U.S.C. § 2724.

10.12  Plaintiffs and each member of the Class have been damaged and/or

are entitled to liquidated damages under the DPPA.  Unless enjoined and

restrained by an order of this Court, Defendant will continue to engage in the

unlawful acts and practices set out herein and benefit from them.  Such acts and

conduct have aggrieved or caused irreparable harm to Plaintiffs and Class

Members, and unless enjoined by the Court, Plaintiffs, the Class, and future

individuals will continue to be aggrieved by Defendant's violations of the DPPA.

COMPLAINT AND JURY DEMAND - 32

## XI.    SECOND CLAIM FOR RELIEF - FOR DEPRIVATION OF PRIVACY (42 U.S.C. § 1983, *et seq.*) (Against All Defendants)

11.1   Defendants have been violating and continue to violate the DPPA and Plaintiffs' and the Class Members' privacy rights under the Fourth and Fourteenth Amendments to the United States Constitution.

11.2   Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... ." The policies, procedures, practices and acts of Defendants described above, has subjected Plaintiffs and the Class Members, to the deprivation of their rights of privacy, as secured to them by the United States Constitution and the DPPA, and are therefore in violation of 42 U.S.C. § 1983.

11.3   Sale of Plaintiffs' DPPA-protected personal information is highly offensive. Disclosure of personal information breaches a trust and subjects individuals to safety and privacy violations.  Harm takes the form of privacy violations such as junk mail or unwanted solicitation and can be as serious as

COMPLAINT AND JURY DEMAND - 33

identity theft, stalking, or battery. The injuries do not merely constitute a one-time invasion, but also a continuing, permanent and irreparable harm. Once a citizen's personal information is unlawfully sold it can be electronically distributed or re-sold instantaneously over the internet. There is no feasible way to protect a person's personal information once the records have been disclosed in violation of the DPPA; the disclosure is permanent.

11.4   In accordance with 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, this Court has jurisdiction to declare the rights and other legal relations of the parties and the Class Members as to whether the policies, procedures, practices and acts of Defendants described above, have subjected, and will continue to subject Plaintiffs and the Class Members, to the deprivation of their right to privacy, as secured to them by the U. S. Constitution and the DPPA, therefore resulting in a violation of 42 U.S.C. § 1983 and 18 U.S.C. § 2721 et seq.

11.5   Defendants' actions are continuing and recurrent, so that, to the extent that there is a civil remedy for damages for violating Plaintiffs' and Class Members' privacy rights under Title 42 U.S.C. § 1983 and 18 U.S.C. § 2724.

11.6   Defendants' individual actions demonstrate their personal involvement in the deprivations of Plaintiff's constitutional rights.  *See Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975).

COMPLAINT AND JURY DEMAND - 34

11.7   Individual Defendants, JOHN BATISTE and agent defendants wrongfully deprived Plaintiff of her federally guaranteed Constitutional and other legal rights in violation of 42 U.S.C. § 1983 by actions, including, but not limited to disclosing statutorily protected private information.

11.8   Individual Defendants, JOHN BATISTE and agent defendants, acting under color of state law, violated Plaintiffs statutory rights under the DPPA, constitutional rights under the Fourth and Fourteenth Amendments, and rights under the laws of the State of Washington.

11.1   As a proximate result of Defendants' conduct as set forth above, Plaintiffs and the Class Members have sustained monetary damages.

11.2   Plaintiffs have been required to engage the services of the undersigned attorneys to prosecute this action.  Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to an award of reasonable attorneys' fees and costs in this action.

## XII.   THIRD CLAIM FOR RELIEF – INVASION OF PRIVACY
### (Against All Defendants)

12.1   Defendants, without Plaintiffs' knowledge or consent, have grossly invaded Plaintiffs' protected rights of privacy as recognized under the United States Constitution, Washington Constitution, Washington Statutes codified in RCW 42.56.050, and the common law.

COMPLAINT AND JURY DEMAND - 35

12.2   Defendants further violated Plaintiffs' rights of privacy by selling, disclosing, acquiring, obtaining, using, and continuing to possess, Plaintiffs' personal information.  In doing so, the Defendants continue to "peer into the private quarters" of Plaintiffs and subject Plaintiffs to the risk that their names, addresses, phone numbers, social security numbers, medical information, and disability information are placed in nefarious hands, without Plaintiffs' knowledge, authorization or consent, thereby subjecting Plaintiffs to substantial concerns about their safety and privacy.

12.3   The sale, disclosure, obtainment and use of Plaintiffs' personal information was not carried out for reasonable or legitimate purposes, but rather for Defendants pecuniary motivations not permitted by law.

12.4   Plaintiffs had a reasonable expectation of privacy at all relevant times, and did not know about, nor consent to, the disclosure, obtainment, or use of their personal information.

12.5   Defendant knew or should have known that the unauthorized taking and sale of Plaintiffs personal information is highly offensive and objectionable to Plaintiffs and to any reasonable person of ordinary sensibilities, and is not of legitimate public concern but rather constitutes a clear, substantial, and egregious violation of Plaintiffs' right to privacy, and would have the natural tendency of causing substantial damages to Plaintiffs.

COMPLAINT AND JURY DEMAND - 36

12.6    Plaintiffs are informed and believe and thereon allege that Defendant acted with actual malice and reckless disregard of Plaintiffs' right to privacy.

12.7    As a direct and proximate result of the aforementioned acts by the Defendants, Plaintiffs have suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame and severe emotional distress.  As a direct and proximate result of the aforementioned acts by the Defendants, Plaintiffs have been damaged and will be damaged, in an amount subject to proof.

12.8    Plaintiffs are informed and believe and on that basis allege that the aforementioned acts of Defendants were done intentionally or with a conscious and/or reckless disregard of Plaintiffs' rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

### XIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants, jointly and severally, as follows:

(a) Certify Plaintiffs' action as a class action and designate Plaintiffs as the representatives thereof;

(b) For monetary damages, with interest thereon at the legal rate, in an amount not less than the statutory-provided liquidated damages, for each Plaintiff and each member of the Class, of not less than $2500 for each separate violation of DPPA by Defendant under 18 U.S.C. § 2721(b)(1);

COMPLAINT AND JURY DEMAND - 37

(c) For punitive damages, the exact amount of which has yet to be ascertained, in order to punish Defendants for their willful and reckless disregard of the DPPA and to deter such future violations;

(d) For an award of pre-judgment interest and reasonable attorney's fees pursuant to 18 U.S.C. § 2724(b)(3) and 42. U.S.C. § 1983;

(e) For cost of the suit incurred herein;

(f) For a preliminary and permanent injunction, enjoining and restraining each of these Defendants, and any of their respective agents, servants, independent contractors, attorneys, employees, directors, officers, representatives and all persons in active concert and participation with them from obtaining Plaintiffs' and the class members' personal information, disclosing the information, using the information, contacting them, and visiting their homes, and doing so to others, and a determination and declaration that such conduct by Defendants is in violation of the DPPA; and

(g) For such other and further relief as may be just, equitable, or appropriate under the circumstances.

COMPLAINT AND JURY DEMAND - 38

## XIV.  TRIAL BY JURY

Plaintiffs demand trial by jury of all issues so triable.

    DATED this _____ the day of April 2017

                                  */s/ James R. Sweetser*
                                  JAMES R. SWEETSER
                                  Sweetser Law Office
                                  1020 N. Washington
                                  Spokane, WA 99201
                                  Telephone: (509) 328-0678
                                  jsweets@sweetserlawoffice.com

COMPLAINT AND JURY DEMAND -  39