1

```
1                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON
2
  JADE WILCOX, on behalf of    )  Case No. 2:17-CV-122-RMP
3 herself and all others       )
  similarly situated,          )  May 25, 2017
4                              )  Spokane, Washington
                   Plaintiffs, )
5                              )  Motion Hearing
  vs.                          )
6                              )  Pages 1 - 39
  JOHN BASTISTE, Chief of the  )
7 Washington State Patrol and  )
  Agents of Defendants, and    )
8 Entity Does 1 through 300,    )
                               )
9 _____Defendants. )

10      BEFORE THE HONORABLE ROSANNA MALOUF PETERSON
             UNITED STATES DISTRICT COURT JUDGE
11

12 APPEARANCES:

13 For the Plaintiffs:        Mr. James R. Sweetser
                             Mr. Thomas G. Jarrard
14                           Attorneys at Law
                             1020 North Washington
15                           Spokane, Washington 99201

16 For the Defendants:       Ms. Shelley A. Williams
                             Assistant Attorney General
17                           Office of the Attorney General
                             800 Fifth Avenue,
18                           Suite 2000, TB-14
                             Seattle, Washington 98104-3188
19

20 Official Court Reporter:  Ronelle F. Corbey, RPR, CRR, CCR
                             United States District Courthouse
21                           P.O. Box 700
                             Spokane, Washington 99210
22                           (509) 458-5283

23

24
   Proceedings reported by mechanical stenography; transcript
25 produced by computer-aided transcription.
```

*MOTION HEARING - MAY 25, 2017*

1      (Court convened on May 25, 2017, at 10:31 a.m.)

2           THE COURTROOM DEPUTY:  All rise.

3      (Call to Order of the Court)

4           THE COURT:  Please be seated.

5           THE COURTROOM DEPUTY:  We have *Jade Wilcox v.*

6  *John Bastiste*, Case No. CV-17-122-RMP, time set for motion

7  hearing.

8           Counsel, would you please make your appearances for the

9  record.

10           MR. JAMES SWEETSER:  Jim Sweetser representing

11  Jade Wilcox and the putative class.

12           MR. JARRARD:  Thomas Jarrard --

13           THE COURT:  Good morning.

14           MR. JARRARD:  Thomas Jarrard.  Good morning, your

15  Honor.

16           THE COURT:  Good morning, Mr. Jarrard.

17           MR. MARCUS SWEETSER:  Marcus Sweetser.

18           THE COURT:  Marcus --

19           MR. JAMES SWEETSER:  Sweetser.

20           THE COURT:  -- Sweetser.  Okay.  Good morning.

21           MS. WILLIAMS:  Good morning, your Honor.

22  Shelley Williams here on behalf of Chief John Bastiste.

23           THE COURT:  Okay.  All right.  Well, I will tell you

24  that I've read the entire motion package, reviewed the exhibits.

25  I am well informed I believe.

3

1      I've also -- and I just want to make sure that the

2  plaintiffs have also had the opportunity of reviewing the

3  Government's -- and I'm going to use "Government" as a phrase

4  there.  Is that okay?  Any --

5          MS. WILLIAMS:  Certainly, your Honor.

6          THE COURT:  Okay.  The Government's supplemental

7  response stating that, in fact -- and, Ms. Williams, if you'll

8  come to the podium, I just want to make sure I understand this;

9  that, in fact, Washington State Patrol, as of April 17th I

10 believe it was -- I'm going from memory until I can pull my

11 notes up -- is now also disclosing date of birth.

12         MS. WILLIAMS:  Yes, your Honor.  I believe it was a

13 week or so ago I realized that the State Patrol made a policy

14 decision and a change of their redaction practice.  So I believe

15 it was as of April 24th the State Patrol's no longer redacting

16 dates of birth under RCW 42.56.240(1).  When I became aware of

17 that, I asked Ms. Dolan to provide a supplemental Declaration.

18 I provided a supplemental response so that the Court and the

19 plaintiffs have the most up-to-date information.

20         THE COURT:  Well, I appreciate that.  So they're

21 actually revealing more information.

22         MS. WILLIAMS:  At this time, all -- as I understand

23 it, all that's redacted on the collision report is the driver's

24 license number; and that's pursuant to a new exemption.  I

25 believe it's 42.56.230, which is more specific for driver's

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1  license numbers.

2  　　　　THE COURT:  Okay.  Okay.  Thank you.  I will hear from

3  the moving party.

4  　　　　MR. JARRARD:  Just for the record, your Honor, we are

5  aware of Docket 11; and -- and that will be addressed in the --

6  in the response.

7  　　　　THE COURT:  Okay.  Good.

8  　　　　MR. SWEETSER:  May it please the Court and Counsel, my

9  name's Jim Sweetser.  I represent Jade Wilcox and the putative

10 class.  I appreciate the fact that the Court has had the

11 opportunity to review all the pleadings and the exhibits, and so

12 I will address my points to the arguments set forth for the

13 Temporary Restraining Order.

14 　　　There's four criteria that need to be established.  We need

15 to establish there's a likelihood that we will succeed on the

16 merits; there's -- that there's a likelihood of irreparable harm

17 if temporary relief is not granted; and the relief we're asking

18 for is for the redactions of the names, addresses, and telephone

19 numbers in collision reports that derive as an original source

20 from the Department of Motor Vehicles or, at least in

21 Washington, the Department of Licensing.

22 　　　Then I will address the other two factors:  The balance of

23 the equities has to be in the plaintiffs' favor and the

24 temporary injunction is in the public interest.

25 　　　The test is, basically, a balancing test.  The more harm

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1   that can be prevented by the Temporary Restraining Order the

2   less likelihood you have to -- need to prevail on the merits.

3   When you're looking at prevailing on the merits, you're not

4   saying, "Is this summary judgment?"  There can be debatable

5   issues; but the Court has to look at all the case law, the scope

6   of the issue, and, if there is a likelihood we will win on the

7   merits, we've satisfied that prong.

8        But the first thing I want to go to is irreparable harm.

9        Now, when we filed the Complaint, we not only alleged that

10  Jade Wilcox was our client but that we will be moving for

11  certification of the putative class.  Class-wide relief is

12  proper without class certification if the relief granted the

13  individual plaintiff necessarily includes similarly situated

14  persons.  The putative class members are identically situated.

15  They're individuals that have been involved in motor vehicle

16  collisions, that have a driver's license, and have registered

17  their vehicles through the Department of Licensing and have

18  provided their personal information and highly personal

19  information to obtain those licenses.

20       The facts, for the most part, are really not in dispute.

21  We know that the information is being used by Craig Swapp for

22  purposes of solicitation.  That's an impermissible purpose under

23  the DPPA.

24       We know that the Washington State Patrol is an authorized

25  recipient of DOL information to perform their government

6

1  function of completing collision reports.

2      We know that the Washington State Patrol discloses the

3  collision reports, re-discloses the information without

4  redaction of any personal information or highly personal

5  confidential information that's outlined in the Driver's Privacy

6  Protection Act.

7      In the brief filed by the State Attorney General, they

8  claim that there's no irreparable harm; and that, if we can't

9  show irreparable harm, we can meet all the other factors and

10  still it would be inappropriate for this Court to grant a

11  Temporary Restraining Order.

12      And it was interesting to me when I walked in and sat at

13  counsel table and it says, "Personal data identifiers must be

14  redacted."  Evidently there's a recognition in this court that

15  some of these personal identifiers can and do result in

16  invasions of privacy and invasions of the home.

17      Your Honor, there is irreparable harm if the federal court

18  does not enforce the federal driver's protection act that's

19  available and provides protection to all licensed drivers and

20  vehicle -- and members of the community that have registered

21  their vehicles in the State of Washington.

22      I noted in the Attorney General's brief that she claims

23  collision reports are less frequent than, for instance, somebody

24  that has a car and has a driver's license and people can access

25  their driver's license, at least when the DPPA was enacted, to

7

 1  access personal information.

 2      But the Attorney General evidently admits, if driver's

 3  license information is used to access personal information, then

 4  the DPA -- DPPA would apply and personal and highly personal

 5  information would be protected.

 6      We are here representing the putative class for the last

 7  four years.  In Washington state, there's approximately 11,000

 8  traffic collisions per month, approximately 120,000 per year.

 9  Collision reports usually involve two drivers.  That means

10  approximately 240,000 citizens of this state are having their

11  personal information available on the Internet without a review

12  process available to anyone for any purpose, including nefarious

13  means, identity theft, stalking, assault, mass marketing, and

14  solicitation.  This means that, over a four-year period,

15  approximately a million people could be affected.

16      The information pulled from Craig Swapp's public disclosure

17  request for a five-month period shows 200 to 400 collision

18  reports per month, approximately 400 to 800 people affected each

19  month.

20      And this is not the only attorney, chiropractor, mass

21  marketers, solicitors that are accessing personal information

22  through collision reports.

23      It is the State's posting of this information on the

24  Internet available to everyone for whatever purpose that creates

25  the irreparable harm.  No person involved in a crash can rest

8

1   assured that their personal information has not been

2   re-disclosed to an unknown recipient for an impermissible

3   purpose, such as, solicitation, identity theft, or stalking.

4   Hundreds of thousands of citizens in this state cannot feel safe

5   in their homes, under the State's main arguments, that personal

6   information in collision reports is exempt from the DPPA and,

7   therefore, using the personal information for solicitation and

8   other nefarious purposes is permissible.

9        Ms. Wilcox and all members of the putative class are still

10  at risk since their information will continue to be accessible

11  to anyone.  There is an ongoing loss of privacy, not knowing,

12  not consenting, and still vulnerable to the release of the

13  information to whomever requests it.  There is absolutely no

14  protection under the State's analysis; and, indeed, there is an

15  ongoing invasion of privacy -- the kind of privacy and freedoms

16  the law recognizes like the right to be left alone by other

17  people, the right to control the dissemination of information

18  about yourself, and the right to control when, to whom, and the

19  extent of the information disclosed.

20       People are aware of the past, and this Court can take

21  judicial notice of the tragedies that have resulted and the

22  foreseeable harms that will result from disclosure of personal

23  information.  The Congressional Record is replete with specific

24  instances where innocent people have lost their lives and/or

25  property.  Rebecca Schaeffer was murdered, Theresa Saldana was

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1  assaulted because their addresses and names were released to the

2  general public.  This is exactly the same information the State

3  Patrol claims they can release, and it's exactly the same

4  information that they released on Jade Wilcox and all putative

5  class members.

6       History has shown that unlimited and unrestricted access to

7  names, addresses, telephone numbers, and other protected

8  personal information required to obtain a driver's license is

9  dangerous and can lead to deadly results.

10      It is this loss of privacy in the sanctity of the home, the

11  one retreat to which men and women can prepare to escape from

12  the tribulations of their daily pursuits, that is surely of some

13  value.  It is the State's interest in protecting the well being,

14  tranquility, and privacy of the home that is in the highest

15  order in a free and civilized society.

16      Once a collision report is impermissibly sold over the

17  Internet, or just released over the Internet, there's no

18  feasible way to protect the information.  Personal information

19  is forever released in cyberspace for any nefarious purpose:

20  Identity theft, stalking, murder, fraud, theft, mass marketing,

21  solicitation.

22      The damage can only be minimized by redacting the personal

23  information from collision reports unless a permissible purpose

24  is shown under the DPPA.  There is no adequate remedy at law.

25  The injuries suffered by Ms. Wilcox and the putative class

1  members is not merely a one-time invasion; but it is a

2  continuing, permanent irreparable harm.  This is precisely why

3  the DPPA provides specifically for injunctive relief.

4      Defendants have indicated that there is no intention to

5  comply with the DPPA's mandate.  Now Chief Bastiste is not even

6  redacting birth dates making identity theft even easier.  As

7  long as the State allows personal information to be disclosed

8  from any crash from any time period, families must live in fear

9  for their privacy and the misuse of that information.

10      Ms. Wilcox and the putative class members continue to be

11  vulnerable to further disclosure of their protected personal

12  information.

13      Future Washingtonians involved in traffic collisions will

14  continue to be deprived of their driver's privacy protection

15  rights applicable to all Americans.  Thus, plaintiff and the

16  putative class's privacy rights cannot be protected or fully

17  rectified after the fact of a final judgment.

18      Your Honor, I think the issue of balancing the equities and

19  balancing the public interests are very simple for the Court to

20  resolve.  It's in the public's interest to protect privacy

21  rights for all the reasons stated and for all the reasons the

22  DPPA was enacted, the Congressional Record, the Congressional

23  intent, and the purpose behind the Act.  I think it's real easy

24  to -- to -- when you're balancing the equities when you look at

25  the citizens of the State's privacy rights and you look at what

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1   would be required of the State to implement the order, and it

2   would just be a matter of blacking out a name, an address, and a

3   birth date.  And that could be done manually or it could be done

4   by just altering their computer system like they did on

5   April 17th to now disclose dates of birth.  It's just a click of

6   the button.  It's not onerous.  It's not burdensome.  The

7   balance of the equities clearly weighs in favor of plaintiff.

8        So now we get to the merits of the case.  Is there a

9   likelihood to prevail on the merits?  Now, the Court needs to

10  understand that we -- we haven't got all the discovery done.

11  We -- we haven't had disclosures, and we're at this point in the

12  case.  There will be more information, and there can be

13  debatable issues.

14       But, when weighing all the law, the Court, at this time,

15  can make a finding on the merits that there is a likelihood that

16  we can -- can succeed on the merits.  This isn't a frivolous

17  action.

18       This action is based upon proof and facts that are largely

19  undisputed.  The issues in the case are:  Is a collision report

20  a Department of Motor Vehicle record?  And that issue has been

21  addressed, and there is one Arkansas case that has said that a

22  collision report is not a motor vehicle record.  But there are

23  cases contrary to that -- and I've cited them in the brief --

24  where the Courts have said that the purpose of the DPPA is a

25  remedial statute.  The remedial purpose is broadly construed,

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1  and the exemptions are narrowly construed.  So, when you take a

2  look at this section and it defines personal information to

3  include names, addresses, dates of birth, and then it says does

4  not include driving history, does not include accident reports,

5  and does not include -- there was one other thing.  If the Act

6  can be construed and reconciled to be consistent with itself,

7  then that's what the Court should do.

8      And, when it says, "on accident reports," that has been

9  interpreted to mean "Yes;" and we're not disputing the collision

10  report is a public record that can be released.

11      What we are disputing is that the content, if it's

12  protected by the DPPA and it's derived from the original source,

13  the Department of Licensing, as a condition of obtaining a

14  driver's license or a vehicle registration, that information

15  remains protected.  And, so, vehicular accidents or reports can

16  still be disclosed and the information, how the accident

17  occurred, what were the causes of the accident, you know, all

18  that sort of information that the State Patrol can -- can use to

19  compile and assess issues of public safety and -- and those

20  types of things, which is a legitimate government function.

21      But there's no legitimate purpose when they're performing

22  those functions and giving out names, addresses, and birth dates

23  to perform that function.  Where's the list?  Where's the proof

24  that all these names and addresses and birth dates are necessary

25  to perform the government function under RCW 46.52.060 as the

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1   Attorney General claims?

2       Your Honor, this issue is really resolved by looking at the

3   United States Supreme Court mandate in *Maracich v. Spears* as

4   amplified and supportive of the U.S. Supreme Court *Reno v.*

5   *Condon*.  And, in the Supreme Court case, the Supreme Court lays

6   forth the test that any exemption is very narrowly construed.

7   And, in that case, the argument was, well, we're performing a

8   government function and this is in anticipation of litigation.

9   That was a case where a person had filed an invasion of

10  privacy -- or a case and -- or not invasion of privacy but there

11  were -- it was a licensing thing where they were selling cars.

12  There were people selling cars, and he had one plaintiff.  And

13  he decided to go out and access the DMV records and get names

14  and addresses of -- and birth dates of registered owners of

15  vehicles and then to send a letter to them saying that they're

16  potentially class members in the class and that they could join

17  in -- potentially join in the litigation.

18      And the Court said, we're going to draw a bright line rule;

19  and, if the predominant purpose is for solicitation, then the

20  Act clearly says explicitly that solicitation by attorneys is

21  not a permissible purpose under any of the exemptions.

22      Of course, the dissent just said, hey, this is too close to

23  call.  It could be in anticipation of litigation.  It could be a

24  function of government management or function of administration

25  of the Court, and the case was remanded back to determine what

14

1   the predominant purpose was.  But, if it is -- the predominant

2   purpose is for solicitation, it was prohibited by the Act.

3        Now, the State Patrol does nothing -- absolutely nothing --

4   to determine whether or not these multiple requesters, these

5   people that are spending thousands and thousands of dollars each

6   month to obtain collision reports for the purpose of harvesting

7   names and addresses, electric (sic), ambulance-chasing

8   chiropractors, and other people to determine whether there's a

9   permissible purpose.  They say they don't have to.  We say they

10  have to.

11       This is not, when you're talking about federally protected

12  privacy rights, an arbitrary decision that the State can make to

13  disregard those rights, disregard the purpose of the statute,

14  and allow solicitation, which has been proven in this case, and,

15  potentially, other more dangerous identity thefts, stalking,

16  murder, domestic violence to occur.

17       If you look at the Eleventh Circuit and the Seventh Circuit

18  and they're coming to the same conclusions as the Supreme Court

19  has found with regards to the original source of the

20  information.  They are coming to the conclusion that you have to

21  look at the source to determine whether it's permissibly

22  disclosed or not disclosed, and the original source doesn't

23  matter.  It stays protected throughout its travels.

24       It says specifically in the DPPA that an authorized

25  recipient cannot re-disclose for an impermissible purpose.  It

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1  even goes further with private citizens that they have to keep a

2  log for five years if they re-disclose so they can justify that

3  their disclosures were made for permissible -- continued for

4  permissible purposes.  The information throughout its travels

5  remains protected.  Otherwise, it eviscerates the whole purpose

6  of the Act.  Why even have the Act?

7      If you look at the time that the Act was amended in 1999,

8  what states were doing, where they were saying you have to opt

9  in to the DPPA.  In other words, you have to affirmatively say,

10  "I want my information protected;" and Congress looked at that

11  and said, "No, no, States.  No, no."  You have to show express

12  consent.  You have to get the consent of the recipient.  And, if

13  you get the consent from the recipient for disclosure, then it's

14  disclosable for all purposes.

15      In this case and all putative class members, the Attorney

16  General and Chief Bastiste will not be able to show that consent

17  has been obtained.  And, for all those reasons and if you look

18  at the state courts that have all been in accord with the same

19  reasoning of the original source and the information protected

20  throughout its travels, we're likely to prevail on this case.

21          THE COURT:  Mr. Sweetser, let me ask you:  Are you

22  also proposing that, in the collision reports, that names be

23  redacted or only the address, telephone number, date of birth?

24          MR. SWEETSER:  The personal information says names,

25  addresses, date of births, and telephone numbers.

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1   THE COURT:  So you're suggesting that the names also

2   be redacted?

3   MR. SWEETSER:  The names of the drivers if those names

4   are obtained from the Department of Licensing.

5   But that is an interesting question because the Act

6   protects the names; but, if the addresses and telephone numbers

7   are not provided, then that could also fulfill the purpose of

8   the Act because it prevents the identity theft.  It prevents the

9   solicitation.  It prevents all the -- the things that derive

10  from providing that highly -- that personal information.  But,

11  if you apply the Act as written, it does provide that names,

12  addresses, telephone numbers should be not disclosed if they

13  originate from the act of obtaining a driver's license or a

14  vehicle registration.

15  THE COURT:  So wouldn't that gut the public record

16  nature of a collision report and pretty much make it worthless

17  without names?

18  MR. SWEETSER:  Well, the -- there are exceptions.

19  Okay.  There's the anticipation of litigation.  There's the

20  government function.  In all those functions, you get that

21  information because it's being put to a legitimate use.  So it

22  doesn't gut the Public Disclosure Act.  And, when you look at

23  the Washington state law that provides for exemptions under the

24  Public Disclosure Act and --

25  THE COURT:  Okay.  That's in J?  Exhibit J?

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1    MR. SWEETSER:  I -- I believe so but also the statute

2  itself, and I'll go to that real quick here.  Yeah.  It's --

3  it's the RCW 42.56.230, Exemption (7)(a), provides -- and

4  this -- this is in the Public Disclosure Request Act that

5  provides exemptions -- (Reading) Any record used to provide

6  identity, age, residential address, Social Security number, or

7  other personal information used to apply for a driver's license

8  or identified -- identification card is exempt.

9    And then it goes on to (7)(c), (Reading) Any record

10  pertaining to a vehicle license plate, driver's license, or

11  identification card under RCW 46.00.060 (sic) that, alone or in

12  combination with any other record, may reveal the identity of an

13  individual.

14    And -- and, so, the public record exemptions are consistent

15  with the purposes of the DPPA.

16    THE COURT:  And, presumably, a law enforcement officer

17  conducting an investigation of a collision would ask someone

18  what their name was --

19    MR. SWEETSER:  Yeah and --

20    THE COURT:  -- and might confirm it with a driver's

21  license or something else; but, in fact, the testimony of the

22  individual who's there identifying themselves would actually be

23  the source of that information.

24    MR. SWEETSER:  The -- the source of the information is

25  auto-populated through the driver's license, through a magnetic

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1  card, that goes to databases; and the databases have been

2  created from the original source.

3          THE COURT:  I'm just saying you could still have a

4  public record.  You could still have a collision report that you

5  could release without information gleaned from there if -- if a

6  restraining order were put in place.

7          MR. SWEETSER:  Yes.

8          THE COURT:  It would just be not populating it from

9  the driver's license information.

10          MR. SWEETSER:  Right.  It is a public record, and it

11  is released.  And our contention is that you have to apply the

12  DPPA personal information protections to the original source of

13  that information; and, therefore, it requires redaction even

14  though the public record is the collision report.

15      And cases have found that to be, in fact, the proper

16  procedure:  The dissent in the *Reno* case -- or in the Arkansas

17  case; and, then, there's the *Camara* -- if I can find it real

18  quick here for you.

19          THE COURT:  That's okay.  I know what you're referring

20  to.

21          MR. SWEETSER:  Yeah.  That -- that's a state court

22  case that -- that basically said, Hey, you know, a driver's

23  license is derived from the Department of Motor Vehicles,

24  Department of Licensing.  It's a motor vehicle record, that the

25  collision report is a public record, but the information

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*BY MR. SWEETSER*

1  contained on the collision report is still protected by the

2  federal Driver's Privacy Protection Act.  Otherwise, the entire

3  purpose of the Act, the Congressional intent, the remedial

4  purpose, and the narrow construction of the Act to fulfill its

5  purpose would be eviscerated.

6          THE COURT:  So just to be sure that I understand what

7  you're asking, you would -- regardless of what the purpose was

8  in requesting these collision reports, you would be asking in

9  your TRO motion for all of the personal information to be

10  redacted --

11          MR. SWEETSER:  That --

12          THE COURT:  -- when it's released.

13          MR. SWEETSER:  That's not exactly true because there's

14  14 exceptions to the DPPA; and one is anticipation of

15  litigation, one's government function, one's -- you know.  But

16  there's all those exceptions.

17      All's we're asking for is that, if the State Patrol

18  releases that information, they -- there has to be a permissible

19  purpose.

20          THE COURT:  Okay.

21          MR. SWEETSER:  There has to be a review process.

22  Without that review process, then -- and somebody can't satisfy

23  one of those 14 exceptions, then, yes, you don't release the

24  personal information or the highly personal information.

25          THE COURT:  All right.  Thank you very much.

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1    MR. SWEETSER:  All right.  Thank you, your Honor.

2    THE COURT:  Ms. Williams.

3    MS. WILLIAMS:  Good morning, your Honor.  Again,

4    Shelley Williams, Assistant Attorney General, here on behalf of

5    Chief John R. Bastiste.

6    I think context is key to this litigation.  For 80 years

7    the Chief of the Washington State Patrol has had the statutory

8    duty to file, tabulate, and analyze collision reports.

9    THE COURT:  Okay.  Ms. Williams, I'm just going to --

10   because of the time and the importance of all of these issues --

11   if you don't mind, I'd just like to direct some of your

12   conversation to the things that are of particular note to me.

13   MS. WILLIAMS:  Certainly.

14   THE COURT:  And I want to go to Exhibit J of 3-12,

15   which is the Public Records Exemption Codes.  I went through in

16   detail in those codes and the exemption codes.  It looks to

17   me -- and I realize that plaintiff had highlighted some parts.

18   I didn't realize that before I started highlighting them.  So I

19   don't know which parts are the parts I highlighted versus the

20   plaintiff, but there are certainly parts that they highlighted

21   in orange.  There seems to be plenty of exceptions that would

22   excuse the WSP from releasing this personal information.

23   How do you address that?

24   MS. WILLIAMS:  Well, first, I'd like to say that the

25   exemption -- my understanding is the State Patrol is revising

1  its exemption code log as --

2      THE COURT:  Okay.  Well, whether -- what happens in

3  the future is not an issue for me right now.  I have a TRO

4  request before me.  So how do you explain it now?

5      MS. WILLIAMS:  In terms of the state law exemptions,

6  42.56.230, my understanding is the State Patrol applies -- and I

7  apologize.  It's actually 42.56.250.  I -- I don't have the

8  statutes in front of me but the statutory exemption for records

9  used to prove identity.  My understanding is the State Patrol

10 uses those for actual DOL records like the State Patrol asserts

11 the DPPA for actual DO -- DOL records:  Vehicle registrations,

12 driver's licenses, but not the law enforcement records that may

13 copy information from those records.

14     And I'd submit that whether or not there's an exemption

15 under the public records act is not properly before this Court.

16 The cause of action before this Court is whether there's a DPPA

17 violation.

18     THE COURT:  Okay.  Let's go to the DPPA violation.

19 How do you justify Washington State Patrol's releasing personal

20 information, and what purpose does it serve Washington State

21 Patrol to do that other than getting money?

22     MS. WILLIAMS:  And, if I may take a step back to the

23 context, the records we're talking about are collision reports.

24 We're not talking about a driver's license.  We're not talking

25 about vehicle registration.  We're not talking about raw

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1    information from the DOL database.

2         THE COURT:  But -- and I know that, in your briefing,

3    you tried to do a pea in a shell and move it around and say,

4    well, that isn't WSP information.  That is, actually, Department

5    of Licensing information.

6      But let me ask you:  Is it possible in Washington state to

7    get a driver's license without giving one's personal residential

8    address?

9         MS. WILLIAMS:  To the best of my knowledge, no; but

10   I'd like to go back to the statutory language of the DPPA --

11        THE COURT:  Okay.

12        MS. WILLIAMS:  -- your Honor.

13        THE COURT:  Go ahead.

14        MS. WILLIAMS:  And I'd also like to discuss the

15   legislative history a little bit.  Under --

16        THE COURT:  Okay.  Go ahead.

17        MS. WILLIAMS:  I apologize, your Honor, if there's a

18   specific question you'd like me to answer.

19        THE COURT:  Yes, I would.  What possible reason does

20   WSP have for releasing information that every Washington driver

21   has to give up in order to get a driver's license when they are

22   releasing collision reports?  Personal information that can be

23   exempted by Washington's own rules and which, at first blush,

24   appear to be excluded by the DPPA?  What -- what reason does WSP

25   have for not doing that?

1    MS. WILLIAMS:  Our public records act is a broadly

2   worded mandate for disclosure.  Under RCW 42 -- or 46.52.030, it

3   defines what information needs to go into collision reports.

4   That RCW identifies the entity of the parties involved as

5   material information.

6         THE COURT:  Okay.  So the names of the parties.  What

7   else is required?

8         MS. WILLIAMS:  I'd submit that addresses and dates of

9   birth are a means to identify the person involved in the

10  collision.  There may be 50 John Smiths.  By adding the address

11  and the date of birth will help identify who is a party to that

12  collision.

13    It is for transparency.  It is required under our state

14  public records act.  And, I think, if we want to get to how the

15  DP -- assuming -- assuming that the DPPA applies to these

16  records, (b)(14) -- 2721(b)(14), that was the exemption that the

17  DPPA discussed in the New Richmond police case.  In that case,

18  the Court of Appeals for the State of Wisconsin found that the

19  police department could disclose those police reports because

20  the state law required collision reports to be open to the

21  public.  Collision reports are motor vehicle -- or information

22  about motor vehicle safety.

23    And, yes, our state statute is not as explicit as the

24  Wisconsin statute; but we go to *Gendler v. Bastiste*.  And our

25  State Supreme Court, which is the ultimate authority on

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1  Washington law, has found that collision reports are public

2  records that should be disclosed.

3          THE COURT:  Okay.  Collision reports and the name of

4  the individuals involved but not their telephone numbers or

5  personal addresses.  And, in fact, the personal addresses are

6  the part that put people at risk.

7      Would you -- would you, just personally, have any problem

8  with your personal address being out on the Internet?

9          MS. WILLIAMS:  If I may speak from personal

10 experience, an individual, who had a bone to pick with me

11 because of my work at the AG's office, did find my home address;

12 but it wasn't through collision records.  It was through voter

13 registration records.

14         THE COURT:  So let's go back to:  Do you feel that you

15 had some injury from having your address out through the voter

16 registration records?  Would that person have as easily found

17 you if it was not out on the Internet?

18         MS. WILLIAMS:  Probably not but it goes back to the

19 idea of irreparable harm; and it goes back to the idea that this

20 information -- name, address, date of birth -- is not inherently

21 confidential.

22         THE COURT:  Okay.  I have a problem with that.

23         MS. WILLIAMS:  Okay.

24         THE COURT:  I think it is inherently confidential if

25 one is not willingly disclosing it.  And one is not willingly

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1  disclosing it in order to get a driver's license in the State of

2  Washington.  One is forced to give out that information as I

3  understand your comment and from my personal experience.

4       So, if it's not willingly being disclosed, then it would

5  arguably be confidential.

6            MS. WILLIAMS:  No, I -- and I respectfully disagree

7  with that; that personal information, name and address, is given

8  out in a variety of circumstances.  And --

9            THE COURT:  Voluntarily.

10            MS. WILLIAMS:  Voluntarily or involuntarily.  And I

11  think -- there are only two cases cited in the plaintiffs'

12  briefs that adopted the logic that the DPPA follows the

13  information throughout its travels in terms of accident reports

14  and that was *Whitaker*, which is unpublished, and *Pavone*, which

15  is published.  And it relied on, I believe, a misreading of

16  *Senne v. Village of Palatine*.

17       Now, *Senne v. Village of Palatine,* at least the first 2012

18  *en banc* opinion, was interpreted to mean that law enforcement

19  records are subject to the DPPA and subsequent disclosure of

20  those law enforcement records have to be a permissible use under

21  the DPPA.

22       But, when it went back up -- and the citation for the

23  second review is 784 F.3d 444.  When it went back up to the

24  Seventh Circuit, the question was not whether providing the

25  parking ticket in response to a public records request was a

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1  permissible use under the DPPA.  The question was whether

2  disclosure of each piece of information on that public -- on

3  that parking ticket met a legitimate government need under

4  (b)(1).  And the Seventh Circuit found that it met that

5  legitimate need.

6      And the Seventh Circuit also used a bit of a balancing test

7  and looked at:  What is the Government's need for disclosing

8  this information on a parking ticket versus the privacy

9  interest?  And I'd submit, under that analysis, the State Patrol

10  is well within the DPPA.

11          THE COURT:  Okay.  Explain to me how.  And this goes

12  back to what possible purpose is there, you know, other than

13  you've already said, well, it's to determine which Mr. Johnson

14  or which Ms. Johnson is being referred to.

15      But I just think this seems ripe -- confrontational to the

16  DPPA and especially when it's -- let's go to the point which the

17  plaintiffs have brought this up about, which is solicitation by

18  attorneys.  What possible purpose is there that Washington State

19  has in releasing that kind of personal information without

20  inquiring whether it's going to be for solicitation?

21          MS. WILLIAMS:  The purposes are mandated under the

22  public records act.  The purpose is that accident reports are

23  different.  And, if you look back at the Congressional debate --

24  and I'm referring to 139 Congressional Record S15745-01.  In

25  that record, Senator Hatch expressed concerns by his media

1  constituents that the DPPA would prevent the media from

2  accessing driving histories; would prevent the media from

3  knowing whether, say, a pilot was a safe driver; whether a

4  police officer had a DUI.

5       And later in that Congressional Record at S15763-364,

6  Senator Boxer stated, and I quote, "Under this amendment,

7  personal information is defined as including a driver's name,

8  address, phone number, and Social Security number.  It does not

9  include information on a driver's accidents, violations, or

10  status.  Let me repeat that.  Nothing in this bill will stop the

11  press, insurance companies, employers, or anyone else from

12  obtaining information about an individual's driving record."

13       THE COURT:  Okay.  So, from your quote, that says

14  specifically that the driver's name, address, and Social

15  Security number should be excluded.

16       MS. WILLIAMS:  I agree with the Social Security

17  number; but, without the identifying information of who was

18  involved in the collision, the collision report has very little

19  meaning.  In the *Camara* case cited in plaintiffs' brief, that

20  dealt with -- I believe it was a public entity requesting the

21  driving histories of its employees.  And there's language in

22  that case that the DPPA does not require driving histories; and

23  I'd submit, by extension, accident reports be excised of all

24  personal information.  Otherwise, it's only valuable for

25  statistical purposes.  There may be a bad intersection.  There

1  may be a bad curve, and the general public would want to know

2  what happened and may want to contact the involved drivers.

3          THE COURT:  Okay.  So, as I understand the plaintiffs'

4  position, if, in fact, the situation, such as, litigation or an

5  actual inquiry or discovery into an actual accident, that would

6  be an exemption under the DPPA; and they are not asking for

7  redaction.  So it would serve that purpose.

8        So let's go back to what they are objecting to, which is

9  how is it that the WSP can justify giving this personal

10  information to solicitors, to -- to be able to contact people

11  just because they've been in a collision when you have a slough

12  of exemptions under state law and where that does not appear to

13  be an exemption under the DPPA?

14          MS. WILLIAMS:  First, I don't believe the DPPA has an

15  exemption or permissible use for a media watch -- for the media

16  or public watchdog.  I don't know what exemption would provide

17  -- allow the State Patrol to disclose under the DPPA an

18  unredacted collision report to the media.

19          THE COURT:  So, if the media were to ask, certainly

20  WSP or the State Legislature could come up with a media

21  exemption if they so wanted.

22          MS. WILLIAMS:  If the DP -- it would require Congress

23  to amend the DPPA, but I think the fundamental question is

24  whether the DPPA applies to these records.

25          THE COURT:  And why would it not?  I know you say it's

1  because the WSP hasn't created these records.  They've just

2  taken information through that software program, whatever it was

3  called, and which self-populates the forms from -- you know,

4  into a collision report from the bar code of the driver's

5  license.  But WSP clearly is getting that information from the

6  bar code from the driver's license, which is not voluntarily

7  given for a full disclosure by any individual.

8          MS. WILLIAMS:  And, your Honor, just to clarify, the

9  State Patrol's argument is not that the driver's license is not

10  a motor vehicle record.  I think the path here is there's a

11  collision under 2721(b)(1), government use.  The trooper can

12  take the driver's license, can scan it, and have the form

13  populate or, in the old days, write it down.  I don't think

14  anyone is arguing that that is not a permissible use.  I'd

15  submit, at that point, the DPPA ends because there are certain

16  permissible uses that are inherently public.

17      I think the fatal flaw with the argument that the DPPA

18  follows the personal information through its travels is that it

19  doesn't just apply to collision records.  It applies -- it

20  applies to DUI reports.  It applies to vehicular homicide

21  reports.  It applies to any record where identifying information

22  was taken from a driver's license.  It would apply to this

23  Court's own court files.

24      Ms. Wilcox filed a copy of her PTCR in this court file.

25  Under plaintiffs' argument, if someone wanted to buy the

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1    exhibits for -- I think it's $0.10 a page, that would be a DPPA

2    violation.  There would have to be another permissible use.

3        I think the better reading, the one that is consistent with

4    the plain language of the statute, the one that's consistent

5    with the legislative history, and the one that harmonizes both

6    the DPPA and our state public records law is that, once that

7    information is put to a permissible use, whether in a collision

8    report, whether in a vehicular homicide report, whether in a

9    court record, then part and parcel of that permissible use is

10   public disclosure of that information.

11       And I want to be clear that we're not talking about highly

12   personal information.  The PTCR has limited fields.  It doesn't

13   have a Social Security number.  It doesn't have the driver's

14   photograph.  The only possible reference to medical information

15   is if there's a restriction on the driver's license.  So, for

16   example, myself, I have a corrective lens restriction.  There

17   might be a note.  I believe there's a code that the person might

18   have a medical file at DOL, but it would not -- but it would

19   not --

20       THE COURT:  Such as, epilepsy.

21       MS. WILLIAMS:  But it would not say this person has

22   epilepsy.  It would not say this person has a particular

23   disorder or medical condition.  It would just note that there's

24   a medical record at DOL.

25       And I'd submit that is material information to a collision.

1  The purpose of collision reports is not only to document what

2  happened but to enable people to understand what happened and

3  why it happened -- why it happened, and a medical condition may

4  be a contributing factor.

5          THE COURT:  So just so I'm perfectly clear on your

6  argument, once someone has a collision in Washington state and

7  the Washington State Patrol drafts up a collision report, which

8  would be a permissible purpose under DPPA, then all protection

9  of DPPA ends.  That's your position?

10         MS. WILLIAMS:  That there are certain permissible

11 uses -- like a collision report, like filing something in open

12 court -- that carry with it inherent, broad public disclosure.

13 And a collision report -- our state law requires collision

14 reports.  Our state law requires identifying the people in a

15 collision.

16         THE COURT:  So, just -- you know, I'm trying to

17 understand your argument.  So that called for a "Yes" or "No"

18 answer.

19         MS. WILLIAMS:  My apologies.

20         THE COURT:  So let me say it again and see if I've got

21 it right.  Your position is that, once someone has been in a

22 collision and the WSP drafts up a collision report and pulls all

23 of their personal information from their driver's license and

24 puts it in that collision report, then that can be -- that

25 collision report can be re-distributed without any violation of

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1   DPPA and can be re-distributed for any purpose and to any person

2   or entity.

3        Is that correct?  "Yes" or "No."

4            MS. WILLIAMS:  Correct if I may provide one

5   qualifier --

6            THE COURT:  Certainly.

7            MS. WILLIAMS:  -- that the information on the PTCR is

8   limited.  Again, we're not talking about Socials --

9            THE COURT:  Wait.  Define "PTCR."

10           MS. WILLIAMS:  My apology --

11           THE COURT:  What is "PTCR"?

12           MS. WILLIAMS:  My apologies, your Honor.  PTCR stands

13  for Police Traffic Collision Report.  It is the report that

14  Ms. Wilcox filed with her -- I believe it was her Declaration or

15  someone else's Declaration.

16       And it's a standardized form.  46.52.030 requires certain

17  information to be on a collision report.  The PTCR is that

18  standardized form, and I apologize for using the acronym.

19           THE COURT:  No, that's okay.  So anything that the WSP

20  puts on this PTCR is, then, no longer covered by DPPA and can be

21  disclosed to anybody on the Internet, sold, re-sold.  That's

22  your position.  Correct?

23           MS. WILLIAMS:  Yes, given the limited information on

24  the PTCR.

25           THE COURT:  All right.  Anything else you want to say?

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1  And you're still stating that, under the Washington public

2  disclosure -- you know, the exemptions as indicated in Exhibit J

3  -- those are not applicable.

4          MS. WILLIAMS:  If -- I believe it's 42.56.230 -- and I

5  apologize.  I don't have the statute.  250, it might be

6  Subsection (7).  My understanding is the State Patrol asserts

7  those are actual DOL records in the same manner it asserts DPPA

8  for actual DOL records.  It does not assert those exemptions for

9  law enforcement records that may have copied information from a

10  driver's license or from the DOL database.

11          THE COURT:  So the answer is:  Those don't apply in

12  your view.

13          MS. WILLIAMS:  Correct, your Honor.

14          THE COURT:  All right.  Anything else you'd like to

15  say?

16          MS. WILLIAMS:  If I have any time left, if I --

17          THE COURT:  You know, Mr. Sweetser went on quite a

18  bit.  I do have an 11:30 video conference.  So, if you would

19  like to say something more and then I'm going to have to limit

20  Mr. Sweetser, also; but please go ahead.

21          MS. WILLIAMS:  I would just like to end with the

22  public interest.  Equitable relief is to preserve the status

23  quo.  The status quo is disclosure of these collision reports.

24  The status quo is allowing the public to know who was involved

25  at a collision.

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*RESPONSE BY MS. WILLIAMS*

1   And I would urge this Court to, again, consider the

2   consequences of plaintiffs' analysis.  It's not just collision

3   reports.  It's DUI reports.  It's court records.

4   And I'd submit to this Court that the public interest is to

5   wait on temporary injunctive relief.  Let the parties fully

6   vet -- fully brief this issue.  Let this -- let the parties

7   fully flesh out all the arguments and maintain the status quo.

8   THE COURT:  You know, Ms. Williams, I actually do have

9   one more question that kind of you've sparked and, that is, what

10  would be the injury to WSP to impose a Temporary Retraining

11  Order?  How much work would it be to just block out that

12  personal information on reports that you are selling?

13  MS. WILLIAMS:  In my understanding, it would require a

14  programming fix; but it's -- and I -- I'd submit, also, that

15  plaintiffs haven't specifically and precisely defined what

16  they're asking for in terms of temporary injunctive relief.  At

17  parts in their briefing, they ask for the registered owner's

18  personal information to be redacted.  At other parts of their

19  briefing, they ask for all personal information to be redacted.

20  Today plaintiffs' counsel indicated that, well, if there's a

21  permissible use under the DPPA, that it could be released.

22  And it's not just -- it's not just redaction of the

23  personal information.  It's also going to be what is -- what

24  would be permissible under the DPPA.

25  And I'd submit that it would also have a chilling effect on

1  transparent law enforcement; that, again -- and this was in the

2  *New Richmond News* case.  After the opinion in *Senne*, New

3  Richmond Police Department decided to redact not only accident

4  reports but criminal investigative reports that may have used

5  driver's licenses to identify a person.  And a similar ruling,

6  I'd submit, is going to chill transparency that is going -- may

7  result in the identification of criminal reports.  I'd submit

8  that's not in the public interest.

9          THE COURT:  Okay.  Thank you very much.

10          MS. WILLIAMS:  Thank you, your Honor.  I appreciate

11  your time.

12          THE COURT:  Mr. Sweetser, I'm going to have very

13  limited time for you; but --

14          MR. SWEETSER:  I'm just going to make three points,

15  your Honor.

16          THE COURT:  Well, let me ask the first question, which

17  Ms. Williams very astutely raises.  What exactly are you asking

18  to have redacted?

19          MR. SWEETSER:  Yeah.  The -- the request is to redact

20  protected personal information contained in collision reports

21  unless consent from the person is obtained or a narrowly

22  construed specific exemption under the Act can be shown.

23      So we're asking for redaction unless the DPPA is followed

24  and one of the 14 exceptions can be shown.

25      Now, the way that that can be done is by the State Patrol

1   having a little form and the people have to check their box and

2   certify under the penalty of perjury and fraud and everything

3   else that they're asking for a permissible purpose.

4          THE COURT:  But -- but let's be specific.  So the

5   information.

6          MR. SWEETSER:  Okay.  It's the name, address, and date

7   of birth that's personal information that's contained in a

8   collision report.

9          THE COURT:  Telephone number?

10         MR. SWEETSER:  And telephone number.

11         THE COURT:  Okay.  So even the name.  You think the

12  name should be redacted.

13         MR. SWEETSER:  The name -- the name is personal

14  information according to the DPPA.  And, if you follow that --

15  and it says in the DPPA that, even though you obtain it for a

16  permissible purpose, like the State Patrol obtains it for a

17  permissible purpose, re-disclosure has to have a permissible

18  purpose.  Solicitation can never be a permissible purpose.  So

19  you can give everything out if it falls within one of the 14

20  exceptions.

21      So, if you apply the Act and the clear, plain nonambiguous

22  language of the Act, it would include personal information; but

23  to solve the real issues with identity theft and other things

24  and stalking and solicitation and marketing, the address and the

25  telephone number are clearly what the people are -- are going

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*REPLY BY MR. SWEETSER*

1   after and what create the threat to the person.  And I agree

2   with you in that -- to that extent.  The name itself, generally,

3   without other identifying information, probably wouldn't rise to

4   the level of irreparable harm.

5        A couple things, too, in the (b)(14) exception under the

6   Act and the *Camara* -- or the *Richmond News v. The City of*

7   *Richmond*.  There, under (b)(14), they -- the Legislature in the

8   state enacted a specific law that -- that had a review process;

9   and, based upon an order of the custodian -- so there's

10  accountability and there's review -- the traffic collision

11  report could be released.

12       The Washington Legislature has never enacted a statute of a

13  similar nature; and to argue that 46.52.060, compiling

14  information about traffic accidents when they have all the

15  information, requires that they give the information to the

16  public for solicitation and everything else is just like

17  throwing everything at the wall and hoping something sticks.

18  It's not the same as the *Richmond News v. City of New Richmond*.

19       And, then, finally, just to conclude and it's a maxim in

20  tort law, the safety of the people takes precedence over

21  profits.  And that's what this is all about.  The safety and

22  privacy of every Washingtonian that's involved in a motor

23  vehicle accident and the putative class could be as large as a

24  million people.

25       Thank you, your Honor.

*MOTION HEARING - MAY 25, 2017*
*MOTION FOR TEMPORARY RESTRAINING ORDER*
*REPLY BY MR. SWEETSER*

1          THE COURT:  Thank you.  Counsel, I'm going to review

2  all of the case law, which will take me a little while; and I'll

3  issue a written opinion.  Court's adjourned.

4          (Court adjourned at 11:33 a.m.).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

39

C E R T I F I C A T E

1

2

3      I, RONELLE F. CORBEY, do hereby certify:

4      That I am an Official Court Reporter for the United States

5   District Court for the Eastern District of Washington in

6   Spokane, Washington;

7      That the foregoing proceedings were taken on the date and

8   at the time and place as shown on the first page hereto; and

9      That the foregoing proceedings are a full, true and

10  accurate transcription of the requested proceedings, duly

11  transcribed by me or under my direction.

12      I do further certify that I am not a relative of, employee

13  of, or counsel for any of said parties, or otherwise interested

14  in the event of said proceedings.

15      DATED this 5th day of June, 2017.

16

17  _____

18                   RONELLE F. CORBEY, RPR, CSR, CRR
                     Official Court Reporter for the
19                   U.S. District Court for the
                     Eastern District of Washington in
20                   Spokane County, Washington

21

22

23

24

25