FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 21, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JADE WILCOX,<br><br>                      Plaintiff,<br><br>    v.<br><br>JOHN BATISTE and JOHN DOES 1-300,<br><br>                    Defendant. | NO: 2:17-CV-122-RMP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant Chief John R. Batiste's Motion for Summary Judgment, ECF No. 35. Chief Batiste moves for summary judgment on all claims made by Plaintiff Jade Wilcox, who opposes Chief Batiste's motion, ECF No. 56. The Court has considered the parties' arguments, briefings, and the record, and is fully informed.

## BACKGROUND

In the state of Washington, the Washington State Patrol ("WSP") creates Police Traffic Collision Reports ("PTCRs") when responding to the scene of a car accident. ECF No. 3-6. The PTCRs include, among other things, the name,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

address, driver's license number, telephone number, and other identifying information about the drivers involved in the car accidents, as well as the names and information of any witness to the accident. *Id.* The WSP creates the PTCRs using a program called SECTOR. ECF No. 5-4 at 2. SECTOR is a program installed on a WSP officer's computer that works by scanning the bar code on a driver's license or motor vehicle registration to auto-populate the information into the PTCR. *Id.*; *see also* ECF No. 22-3 at 2.

The WSP allows public access to PTCRs on the Washington Requests for Electronic Collision Reports website. ECF No. 5-1 at 2. This website allows members of the public to search through PTCRs and request access to them for a fee of $10.50 for each collision report. *Id.* If the requestor was not an involved party or a representative of an involved party, the WSP would redact birth date and driver's license numbers from the report, but otherwise would leave uncensored the rest of the document, including the parties' names, addresses, and telephone numbers. *Id.*

Ms. Wilcox was involved in a car accident on July 9, 2016. ECF No. 3-1 at 2. Five days later, Ms. Wilcox received a letter from a law firm in Spokane soliciting her business for its automobile injury practice. *Id.* at 2–3. The letter explained that the law firm obtained Ms. Wilcox's information from the PTCR public records request process. *Id.* at 3. The Collision Records Manager for the WSP later confirmed that the WSP disclosed Ms. Wilcox's July 9, 2016, PTCR to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

the law firm pursuant to a request on the Washington Requests for Electronic Collision Report website. ECF No. 5-1 at 2–3. The WSP redacted Ms. Wilcox's birth date and driver's license number, but otherwise left Ms. Wilcox's name, address, and telephone number uncensored. *Id.*

Following these events, Ms. Wilcox filed this class action complaint against Chief Batiste, the head of the WSP, and 300 John Does. ECF No. 1. Ms. Wilcox alleged that Chief Batiste's policies with the WSP violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–2725, because he knowingly disclosed personal information from motor vehicle records of Ms. Wilcox and others by providing uncensored PTCRs to third parties. *Id.* at 28. Ms. Wilcox also alleged that Chief Batiste violated her and others' constitutional right to privacy and committed the common law tort of invasion of privacy. *Id.* at 33–39. Ms. Wilcox later re-alleged these claims in an amended complaint. ECF No. 39. Ms. Wilcox seeks monetary damages and permanent injunctive relief. *Id.* at 37–38.

Ms. Wilcox also moved for a preliminary injunction. ECF No. 3. In her motion for a preliminary injunction, she argued that Chief Batiste violated the DPPA and that she and the class would suffer irreparable harm if the disclosure policies were not enjoined because their personal information could be dangerously disseminated. *Id.* Chief Batiste opposed the motion. ECF No. 5. Following a hearing, ECF No. 13, this Court instituted a preliminary injunction, finding that Ms. Wilcox and the putative class were likely to succeed on the merits,

that they would suffer irreparable harm without an injunction, and that the balance of equities and the public interest weighed in favor of granting the injunction. ECF No. 14. The Court ordered Chief Batiste to redact addresses, driver's license numbers, dates of birth, information about sex, height, and weight from PTCRs before distribution to third parties. *Id.* at 10.

Chief Batiste now moves this Court for summary judgment on all of Ms. Wilcox's and the putative class's claims. ECF No. 35. Chief Batiste argues that he is entitled to Eleventh Amendment immunity and qualified immunity. *Id.* Additionally, he argues that the three claims all fail on the merits.[1] *Id.*

## LEGAL STANDARD

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve

---

[1] Ms. Wilcox opposed Chief Batiste's motion, ECF No. 56, and Chief Batiste filed a reply. ECF No. 64. As the Court finds that Chief Batiste is entitled to immunity, the Court does not address the merits of the claims.

the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Id.* at 325.  The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324.  The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted).

The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990) (court will not presume missing facts).  However, the Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

///

## DISCUSSION

### *Defendant's Claims of Immunity*

#### *A. Eleventh Amendment Sovereign Immunity*

Chief Batiste argues that he is entitled to Eleventh Amendment immunity from both equitable and monetary relief, but Ms. Wilcox argues that the Eleventh Amendment does not apply because she is suing Chief Batiste in his official capacity for injunctive relief and in his personal capacity for monetary damages. ECF No. 35 at 4–9; ECF No. 56 at 8–14.

The Eleventh Amendment restricts the ability of individuals to bring suits against states in federal court. U.S. Const. amend. XI. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Emps. Of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973).

However, the Eleventh Amendment does allow lawsuits against state officials. Citizens may sue state officials in their official capacities if the citizens seek only prospective, injunctive relief from an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 159 (1908). Additionally, citizens may seek monetary damages from state officials in their personal capacities if the state is not the real party at interest. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

### 1. Eleventh Amendment Immunity for Chief Batiste in his Official Capacity from Injunctive Relief

The *Ex parte Young* doctrine is an exception to Eleventh Amendment immunity that is designed to provide a remedy for continuing violations of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985). The legal fiction of the *Ex parte Young* action allows citizens to enjoin state action that violates federal law notwithstanding the protections of the Eleventh Amendment. *Id.* An action against a state official in his or her official capacity under *Ex parte Young* is a suit not against an individual, but against the official's office, which is no different than a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Where Congress has provided a detailed remedial scheme in a statute, the *Ex parte Young* exception to Eleventh Amendment immunity may not be applicable to enforcing that statute against a state official. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996).

Chief Batiste and Ms. Wilcox dispute whether the DPPA precludes *Ex parte Young* actions. ECF No. 35 at 5; ECF No. 56 at 8. Chief Batiste claims that the DPPA precludes *Ex parte Young* actions because it already provides a detailed remedial scheme for enforcement. ECF No. 35 at 6. The DPPA allows the Attorney General of the United States to impose a civil penalty on a State department of motor vehicles for each day of substantial noncompliance with the Act. 18 U.S.C. § 2723(b). It also allows civil enforcement of the Act by citizens,

but not against states or their agencies, as they are not defined as "persons" under the Act.  18 U.S.C. §§ 2724(a) & 2725(2).

Courts have found that the mere presence of a remedial scheme is not enough to preclude an *Ex parte Young* action.  For example, the Ninth Circuit held that the Clean Water Act's remedial scheme did not preclude *Ex parte Young* actions.  *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 423–24 (9th Cir. 1996).  Additionally, the Ninth Circuit held that the Lanham Act did not preclude *Ex parte Young* actions with its remedial scheme.  *Sofamor Danek Grp., Inc. v. Brown*, 124 F.3d 1179, 1185 (9th Cir. 1997).  Even though the acts in both cases provided a remedial scheme that included government enforcement of the acts' provisions, *Ex parte Young* actions were not precluded.

The evidence supports that Ms. Wilcox's claim against Chief Batiste in his official capacity is essentially a claim against the State of Washington.  *See Will*, 491 U.S. at 71.  But the DPPA does not allow citizen enforcement lawsuits against states.  *See* 18 U.S.C. § 2725(2) (excluding States and their agencies from the definition of "person").  Accordingly, the plain text of the DPPA shows a congressional intent to preclude *Ex parte Young* actions.  *See Seminole Tribe*, 517 U.S. at 74.

Ms. Wilcox argues that the Eleventh Amendment does not bar actions seeking prospective injunctive relief against individuals who are acting in their official capacity.  ECF No. 56 at 9.  Normally, this is true under the *Ex parte*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

*Young* doctrine. *See Green*, 474 U.S. at 68. But Ms. Wilcox ignores that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, any suit against Chief Batiste in his official capacity is actually a suit against the State of Washington. The DPPA specifically precludes actions against the state by citizens by excluding states and their agencies from the definition of a "person" who may be sued. 18 U.S.C. § 2725(2). Therefore, Ms. Wilcox's action for prospective injunctive relief against Chief Batiste in his official capacity is barred by Eleventh Amendment immunity.

### 2. Eleventh Amendment Immunity for Chief Batiste in His Personal Capacity from Monetary Damages

Chief Batiste also claims that he is immune from monetary damages, but Ms. Wilcox argues that he does not have Eleventh Amendment immunity because he is sued in his individual capacity. ECF No. 35 at 6; ECF No. 56 at 10. "[O]fficers sued in their personal capacity come to court as individuals." *Hafer*, 502 U.S. at 27. If a state officer violates the law, that officer can be held liable for that violation notwithstanding that officer's position as a state officer. *See Johnson v. Lankford*, 245 U.S. 541, 545 (1918) (holding that a suit against a state officer for violating state law was permissible because "[t]here is certainly no assertion of state action or liability upon the part of the state, and no relief is prayed against it.").

An action against an officer in an individual capacity, however, is considered to be against the state when the state is the real party at interest. *Pennhurst*, 465 U.S. at 101. The "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *State of Haw. v. Gordon*, 373 U.S. 57, 58 (1963). Whether a suit is one against the state is determined by "the essential nature and effect of the proceeding." *Ford Motor Co. v. Dep't of Treasury of State of Ind.*, 323 U.S. 459, 464 (1945), *rev'd on other grounds*. "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotations omitted).

In this case, Ms. Wilcox asks for relief in the form of a permanent injunction against Chief Batiste enjoining the disclosure of personal information in collision reports. Therefore, it is arguable that Ms. Wilcox and the putative class ask for a judgment that would "restrain the Government from acting, or compel it to act." *Dugan*, 372 U.S. at 620. However, the State of Washington is not named as a defendant. *See* ECF No. 39 (the amended complaint). Ms. Wilcox seeks damages only from Chief Batiste. *Id.* There is no indication that any monetary judgment will come from the state treasury. The monetary judgment also would not restrain the state from acting or compel it to act, as the monetary judgment would be

against Chief Batiste alone.[2]  Therefore, Chief Batiste is the real party at interest in the claim for monetary judgment.

The real party at interest analysis applies to actions against state officers in their personal capacities for monetary damages. *See Pennhurst*, 465 U.S. at 101. Ms. Wilcox's claim for prospective injunctive relief is against Chief Batiste in his official capacity, which in reality is an action against the office of the Chief of the Washington State Patrol. *See Will*, 491 U.S. at 71.

If the monetary judgment would operate against the state, such that the judgment would "expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act," then the State would be the real party at interest, and Chief Batiste would receive Eleventh Amendment immunity, even though Ms. Wilcox and the putative class do not seek monetary damages from the State.

---

[2] Even if the State of Washington indemnified Chief Batiste if he is found liable for damages, that voluntary decision by the State to indemnify with funds from the state treasury does not give him Eleventh Amendment immunity. *Hale v. State of Ariz.*, 967 F.2d 1356, 1370 (9th Cir. 1992) (*citing Travelers Indem. Co. v. Sch. Bd. Of Dade Cty.*, 666 F.2d 505, 509 (11th Cir. 1982) ("Eleventh Amendment protection is available only if satisfaction of the judgment sought against the [party claiming immunity] *must* under all circumstances, be paid out of state funds.") (emphasis in original)).

Chief Batiste relies on two cases that have found state officers immune from putative DPPA class actions. ECF No. 35 at 7–8. In the first case, the district court in Wisconsin afforded immunity to the Secretary of the Wisconsin Department of Transportation and the Administrator of the Wisconsin Division of Motor Vehicles. *Kraege v. Busalacchi*, 687 F. Supp. 2d 834 (W.D. Wisc. 2009). The district court concluded that the defendants were entitled to Eleventh Amendment immunity because the plaintiffs' complaint targeted the state's laws regarding the release of drivers' personal information to third parties for record storage, not the defendants' interpretation or implementation of the policies. *Id.* at 838–39. By challenging the laws rather than the Defendants' actions, the state was the real party at interest. *Id.*

In the second case, the district court in Missouri afforded Eleventh Amendment immunity to several employees of the Missouri Department of Revenue. *Roberts v. Source for Pub. Data*, No. 08-4167-CV-C-NKL, 2011 WL 1254099 (W.D. Mo. Mar. 31, 2011). Relying on *Kraege*, the Missouri district court found that Missouri was the real party in interest for the same reasons: the plaintiff could not explain how the defendants had acted beyond what Missouri law required, and how those actions beyond the law's requirement was a violation of the DPPA. *Id.* at *8.

The common thread of *Kraege* and *Roberts* is that the state officials' actions alleged to have violated the DPPA were actions that state law required them to do.

*Kraege*, 687 F. Supp. 2d at 838–39; *Roberts*, 2011 WL 1254099, at *8. Therefore, the officials were not acting *ultra vires* and did not act beyond what their state laws required them to do. Because the states' policies left no room for individual interpretation by the state officials charged with implementing the policies, the putative classes in the two cases were essentially challenging the states' policies rather than the defendants' individual actions. *Kraege*, 687 F. Supp. 2d at 838–39; *Roberts*, 2011 WL 1254099, at *8. The states' policies were at issue, and the real parties at interest were the states. Therefore Eleventh Amendment immunity was appropriate. *Kraege*, 687 F. Supp. 2d at 838–39; *Roberts*, 2011 WL 1254099, at *8.

In this case, Chief Batiste argues that Washington's laws on public records require the WSP to make accident reports available upon request, as indicated by the *Gender* decision. ECF No. 35 at 8–9. In that case, the Supreme Court of Washington held that the Washington Public Records Act and other statutes require the WSP to make accident reports available to the public. *See Gendler v. Batiste*, 274 P.3d 346, 356 (Wash. 2012). The plaintiff in *Gender* requested collision reports created about bicycle accidents on Seattle's Montlake Bridge, but the WSP refused to provide them because the plaintiff refused to sign a certification affirming that he would not use the records against the state in litigation based on a federal law. *Id.* at 348; *see also* 23 U.S.C. § 409 (stating that reports created for the purpose of identifying hazardous roadway conditions cannot

be entered into evidence in federal or state court in actions for damages).  In the

ensuing lawsuit, the Supreme Court of Washington interpreted Washington State

and federal law, to conclude that the WSP should disclose the accident reports

without requiring the plaintiff to sign the certification form.  *Gender*, 274 P.3d at

260–61.

When it decided *Gender*, the Supreme Court of Washington relied on two

specific Washington State statutes: Wash. Rev. Code sections 46.52.060 and

42.56.070.  *Gender*, 274 P.3d at 349–51.  Section 46.52.060 requires the WSP to:

> file, tabulate, and analyze all accident reports and to publish annually, . . .
> statistical information based thereon showing the number of accidents, the
> location, the frequency, whether any driver involved in the accident was
> distracted at the time of the accident and the circumstances thereof, and
> other statistical information which may prove of assistance in determining
> the cause of vehicular accidents."

Wash. Rev. Code § 46.52.060.  Section 42.56.070 states:

> Each agency, in accordance with published rules, shall make available for
> public inspection and copying all public records, unless the record falls
> within the specific exemptions of subsection (8) of this section, this chapter,
> or other statute which exempts or prohibits disclosure of specific
> information or records.  To the extent required to prevent an unreasonable
> invasion of personal privacy interests protected by this chapter, an agency
> shall delete identifying details in a manner consistent with this chapter when
> it makes available or publishes any public record; however, in each case, the
> justification for the deletion shall be explained fully in writing.

Wash. Rev. Code § 42.56.070(1).

Chief Batiste argues that *Gender* and these statutes required him to release

the uncensored PTCRs, but *Gender* and the statutes only require that the WSP

tabulate the accident reports as they relate to public safety, and then disclose those accident reports upon request. Wash. Rev. Code §§ 46.52.060; 42.56.070(1); *Gender*, 274 P.3d at 354–55. In fact, the statutes even mandate that agencies delete identifying information from information publicly disclosed in public records. Wash. Rev. Code § 42.56.070(1). Chief Batiste has not cited to a statute that requires him to establish a website from which any person could purchase an unredacted PTCR for a nominal fee.

As a part of its argument that the state is the real party at interest, Chief Batiste argues that he did not act *ultra vires*. ECF No. 35 at 8. In response, Ms. Wilcox refers the Court to the WSP's Public Records Exemption Codes List, ECF No. 3-10, arguing that Chief Batiste violated redaction policies by disclosing PTCRs with personal information on them. ECF No. 56 at 12. In reply, Chief Batiste argues that there are separate codes governing redaction of DOL records and PTCRs, respectively. ECF No. 64 at 7.

A state officer acts *ultra vires* only when the officer acts without any authority whatsoever. *Yakima Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999). The WSP disclosure laws support the conclusion that Chief Batiste did not act *ultra vires* and did act with authority. *Id.* However, the Court also finds that Chief Batiste acted beyond what Washington law required him to do by disclosing unredacted collision reports, and that Ms. Wilcox challenges Chief Batiste's personal actions in implementing Washington

laws by disclosing unredacted collision reports, rather than challenging

Washington's laws on public record disclosure.  Because Ms. Wilcox is not

challenging the state's policies themselves, Chief Batiste is the real party at

interest, and therefore, is not entitled to Eleventh Amendment immunity in his

personal capacity.

### B.  Qualified Immunity

The parties also dispute whether Chief Batiste is entitled to qualified

immunity from monetary damages.[3]  ECF No. 35 at 9; ECF No. 56 at 14.

Qualified immunity is "an entitlement not to stand trial or face the other

burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotes

omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223

(2009).  When government officials invoke qualified immunity from suit, courts

must decide the claim by applying a two-part analysis: (1) whether the conduct of

the official, viewed in the light most favorable to plaintiff, violated a constitutional

or statutory right; and (2) whether the right was clearly established at the time of the

alleged violation.  *See Pearson*, 555 U.S. at 232–36.  "[G]overnment officials

performing discretionary functions [are entitled to] qualified immunity, shielding

them from civil damages liability as long as their actions could reasonably have been

---

[3] "Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."  *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989).

thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).  Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011).

The order in which the Court addresses the two prongs of the qualified immunity test should be flexible, considering the circumstances of each case. *Pearson*, 555 U.S. at 236.  The Court begins by assessing whether the right that Chief Batiste is alleged to have violated is clearly established.

A right from a federal statute or the constitution is clearly established when a reasonable official would understand that his or her actions are violating that right. *Anderson*, 483 U.S. at 640.  When defining the right, the court must be specific and avoid defining the right at a high level of generality.  *Ashcroft*, 563 U.S. at 742. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft*, 563 U.S. at 742) (emphasis in original).  "We do not require a case to be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 563 U.S. at 741.  In the Ninth Circuit, "the plaintiff bears the burden of proving that the rights she claims were 'clearly established' at the time of the alleged violation."  *Moran v. State of Wash.*, 147 F.3d 836, 844 (9th Cir. 1998).

The first step in determining whether a right is clearly established is to define the right in question. *Ashcroft*, 563 U.S. at 741. Here, the federal right that Ms. Wilcox alleges Chief Batiste to have violated is defined in the DPPA. ECF No. 39. Specifically, Ms. Wilcox alleges that Chief Batiste violated that right by creating collision reports with information obtained from driver's licenses and motor vehicle registrations and knowingly disclosing those collision reports to third parties for marketing purposes. *See id.* at 29. The federal right that Ms. Wilcox claims was violated, then, consists of two parts. First, whether knowingly disclosing the collision reports to third parties for marketing purposes violates the DPPA. Second, whether the information in those collision reports was protected by the DPPA.

As to the first aspect of the federal right, the Supreme Court addressed the use of DPPA-protected personal information for marketing in 2013. In *Maracich v. Spears*, the Supreme Court held that attorneys obtaining drivers' personal information for the purpose of soliciting business was not a permissible purpose under the DPPA. *Maracich v. Spears*, 570 U.S. 48, 76 (2013). From the date of this decision, June 17, 2013, Chief Batiste was on notice that the acquisition of personal information protected by the DPPA for the purpose of attorney solicitation was not a permissible purpose under the DPPA. *Id.* The Court finds that this aspect of the federal right was clearly established.

The second aspect of the federal right is that the information in the collision reports was protected by the DPPA. Under the DPPA, personal information is protected if it is obtained from a motor vehicle record. 18 U.S.C. § 2724(a). A motor vehicle record is "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). In this case, the allegations are that Chief Batiste violated the DPPA by disclosing personal information contained within collision reports, with information obtained from the Washington State Department of Licensing through driver's licenses and motor vehicle registrations that the DOL creates. ECF No. 39 at 29. The issue is whether it was clearly established at the time Chief Batiste took these actions that personal information from collision reports were protected by the DPPA. *See Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1158–59 (9th Cir. 2012) (holding that the right must be clearly established at the time the allegedly violative conduct was committed).

The case law was unclear at the time in question as to whether personal information from collision reports was protected under the DPPA during the time in which Chief Batiste's conduct occurred. There are some cases that determine that crash or accident reports are not "motor vehicle records" under the DPPA. *See, e.g.*, *Mattivi v. Russell*, No. Civ.A. 01-WM-533(BNB, 2002 WL 31949898, at *4 (D. Colo. Aug. 2, 2002). On the other hand, some courts have held that the information in collision reports is protected by the DPPA if the information comes

from a motor vehicle record. *See, e.g.*, *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004, 1007 (N.D. Ill. 2015). In fact, there is little case law on what is considered a motor vehicle record within the meaning of the DPPA beyond various federal district court decisions and a few circuit court decisions with different facts, both published and unpublished. *See Marsh*, 680 F.3d at 1159 ("In any event, the opinions by a federal district court and an intermediate state court are insufficient to create a clearly established right.").

When this Court granted Ms. Wilcox's motion for preliminary injunction, this Court found that Chief Batiste's arguments that the DPPA does not apply to personal information on collision reports was unconvincing, given the plain language of the statute. ECF No. 14 at 5-6. Nonetheless, the Court cannot conclude that the question of whether the DPPA applies to a situation similar to the present case is "beyond debate." *Ashcroft*, 563 U.S. at 741.

Given the unsettled state of the law at the time that Chief Batiste implemented and carried out his disclosure policy, the Court finds that the DPPA's protection of personal information on collision reports was not clearly established. The Court finds that Chief Batiste has qualified immunity from monetary damages regarding Ms. Wilcox's DPPA claim and section 1983 claim.

///

///

///

### *Abandoned Claims*

Chief Batiste moved for summary judgment on Ms. Wilcox's claims of constitutional privacy and common law invasion of privacy. ECF No. 35 at 24–31. Ms. Wilcox failed to respond to these arguments. *See* ECF No. 56.

The failure to respond to arguments on a motion can be construed as consent to the entry of an order against the party that failed to respond. LCivR 7(e). Because Ms. Wilcox failed to respond to Chief Batiste's motion for summary judgment on the constitutional privacy claim or common law invasion of privacy claim, the Court grants summary judgment for both claims.

Additionally, even if Ms. Wilcox did not abandon her claim for invasion of privacy, Ms. Wilcox failed to show that she filed a claim with the Office of Risk Management ("ORM") prior to filing this lawsuit. All claims against the State of Washington or its officers must be presented to the ORM. Wash. Rev. Code § 4.92.100. A claimant can only file an action against the state official in court if sixty days had passed since the filing of the claim with ORM. Wash. Rev. Code § 4.92.110. There is no evidence that Ms. Wilcox followed this procedure. For this reason, Ms. Wilcox's invasion of privacy claim against Chief Batiste is dismissed.

### *John Doe Defendants*

Ms. Wilcox named 300 John Doe Defendants in her original complaint and first amended complaint. ECF Nos. 1 & 39. Ms. Wilcox has not made any effort

to identify or name these John Does.  It has been twenty months since this case was originally filed.  ECF No. 1.

If a plaintiff does not know the identity of a defendant when an action is filed, the plaintiff should be given an opportunity to identify the unknown defendants in discovery.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); LCivR 10(a)(3).  However, where a plaintiff fails to take reasonable efforts to identify the unknown defendants, the district court can dismiss for failure to prosecute.  *See Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976) (upholding dismissal of complaint when defendants were not served for almost one year after filing for failure to prosecute); *Carpenter Crest 401 v. Converti*, No. CV-15-020004-PHX-JZB, 2017 WL 3190787, at *2–3 (D. Ariz. July 27, 2017) (dismissing plaintiff's complaint against Doe defendant for failure to prosecute).

Ms. Wilcox has made no effort to identify the Doe Defendants in this case. This case was filed on April 4, 2017, and twenty months have elapsed without Ms. Wilcox identifying the Doe Defendants.  ECF No. 1.  Accordingly, the Court dismisses Ms. Wilcox's claims against the Doe Defendants without prejudice.

### *The Preliminary Injunction*

On the motion of Ms. Wilcox, this Court entered a preliminary injunction against Chief Batiste enjoining him from disclosing personal information in PTCRs and ordering him to redact each person's address, driver's license number, date of birth, sex, height, and weight from any collision reports that were disclosed.

ECF No. 14.  As discussed previously, his Court has determined that summary judgment is appropriately granted in favor of Defendants.  Fed. R. Civ. P. 54; 58.

"A preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves *ipso facto* when a final judgment is entered in the cause."  *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093–94 (9th Cir. 2010) (emphasis in original).  Accordingly, upon entry of judgment, the preliminary injunction, ECF No. 14, shall dissolve.

## CONCLUSION

The Court finds that Chief Batiste is entitled to Eleventh Amendment immunity in his official capacity and qualified immunity in his individual capacity for any violations of the DPPA that may have occurred.  Ms. Wilcox abandoned her other claims.  Additionally, she failed to identify and prosecute the John Doe Defendants.  Therefore, the Court will dismiss all claims against Chief Batiste with prejudice, all claims against the John Does without prejudice, and dissolve the preliminary injunction.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendant's Motion for Summary Judgment, **ECF No. 35**, is **GRANTED**.

2.     Ms. Wilcox's claims against Chief Batiste in his official and personal capacities are **DISMISSED with prejudice**.

3.      Ms. Wilcox's claims against the 300 John Does are **DISMISSED without prejudice**.

4.      Judgment shall be entered in favor of Defendants.

5.      Upon entry of judgment, the Preliminary Injunction imposed by this Court, **ECF No. 14**, is **DISSOLVED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** December 21, 2018.


                          ____*s/ Rosanna Malouf Peterson*____
                          ROSANNA MALOUF PETERSON
                          United States District Judge